30040. AMERICAN CASUALTY COMPANY *v.* SOUTHERN STAGES INCORPORATED *et al.* `

DECIDED SEPTEMBER 8, 1943. REHEARING DENIED OCTOBER 7, 1943.

24

*Martin, Martin & Snow,* for plaintiff in error.

*R. C. Whitman, T. A. Jacobs Jr.,* contra.

GARDNER, J. The plaintiff in error contends that its liability is restricted to damages occasioned by injuries "resulting from the negligent operation, maintenance, or use of motor vehicles." That portion of the statute applicable to this contention is found in the Code, § 68-612, as follows: "No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried, and of the public, against injury proximately caused by the negligence of such motor common carrier, its servants or agents; and in cases of vehicles transporting freight, to secure the owner or person entitled to recover therefor against loss or damage to such freight for which the motor common carrier may be legally liable; and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The Commission shall approve, determine, and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and such bonds shall be for the benefit of, and subject to suit or action thereon by, any person who shall sustain actionable injury or loss protected thereby. The Commission may, in its discretion, allow the holder of such certificate to file in lieu of such bond a policy of indemnity insurance in some indemnity insurance company authorized to do business in this State, which policy must substantially conform to all of the provisions hereof relating to bonds, and

must likewise be approved by the Commission. The Commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the motor carrier so warrants." It will be observed that the Code section is designed to protect three classes against financial liability of motor common carriers to respond in damages for the negligent conduct of the business of motor common carriers: first, motor common carriers of passengers; second, motor common carriers of freight; and third, the public (when neither the relationship of carrier and passenger nor carrier and shipper exists). The instant case is brought under the first classification. The particular verbiage of the statute as applied to this class is: "No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond . . for the protection, in case of passenger vehicles, of the passengers, . . against injury proximately caused by the negligence of such motor common carrier, its servants or agents. . . The Commission shall approve, determine, and fix the amount of bonds and shall prescribe the provisions and limitations thereof. . . The Commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance, . . which policy must substantially conform to all the provisions hereof relating to bonds and must likewise be approved by the Commission. . ." The policy in the instant case has attached to it a rider, which is a part of the policy. This rider, being the endorsement of the Public-Service Commission of Georgia, is in part as follows:

"Georgia State endorsement to be attached to public liability and property damage insurance policies. Endorsement for motor-carrier policies of insurance for bodily injury liability and property damage liability and property damage under section 7 of the motor-carrier act of 1931, and/or motor common-carriers act of 1931 as amended in 1937. The policy to which this endorsement is attached is an automobile bodily-injury liability and property-damage liability policy, and is hereby amended to assure compliance by the insured, as a motor carrier of passengers or property with section 7 of the motor-carrier act of 1931 and/or motor common-carriers act of 1931 as amended in 1937 and the pertinent rules and regulations of the Georgia Public-Service Commission. In consideration of the premium stated in the policy to which this endorsement

is attached, the company hereby agrees to pay any final judgment recovered against the insured and/or its surety for bodily injury to or the death of any person or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and loss of or damage to property of the insured, and property transported by the insured, designated as cargo), resulting from the *negligent operation, maintenance, or use of motor vehicles,* under certificates of public convenience and necessity or permit issued to the insured by the Georgia Public-Service Commission or otherwise under the above-mentioned acts, within the limits of liability hereinafter provided, regardless of whether such motor vehicles are specifically described in the policy or not." (Italics ours).

The gravamen of the demurrer and of the argument of the insurance carrier is based on two grounds of the demurrer: (1) "Said petition shows on its face that the death of Albert Clarke did not and could not have resulted from the *negligent operation, maintenance or use of motor vehicles insured by this defendant.* The entire complaint is based upon the alleged acts and omissions on the part of the bus company's driver, which occurred while the bus was standing still; and the law does not contemplate that this defendant shall cover any such acts or omissions." (Italics ours.) To this view we can not agree. There is no doubt in our minds that under the statute it was the legislative intent that the insurer is to stand in the shoes of the motor carrier of passengers, and be liable to the passenger in any instance of negligence where the motor carrier is liable. The statute nowhere remotely expresses or implies that where an insurance carrier undertakes for hire to stand sponsor for the negligent acts of a motor carrier of passengers under the general law governing this relationship, such insurance carrier may contract for a less liability than that which the statute imposes upon the motor carrier. To give the statute such a construction would be to render the statute subservient to the conditions of the insurance policy, and not the insurance policy subservient to the provisions of the statute. If the terms of the policy should have the interpretation which the insurance carrier seeks to invoke, the Public-Service Commission would thus be empowered to abrogate the terms of the statute. We do not think the commission intended any such thing in its endorsement of the policy.

A proper construction of the terms of the statute does not purport to convey any such power of limitation of liability on the commission in the exercise of its discretion in allowing the acceptance of indemnity insurance in lieu of the bond; and it is quite evident that the commission intended no such interpretation of the language of the rider endorsement. This court held, in *Laster* v. *Maryland Casualty Co.*, 46 *Ga. App.* 620 (168 S. E. 128): "The passengers and the public being the beneficiaries which the statute seeks to protect and insure, the indemnity-insurance policy required by the statute is one of insurance against liability, and not insurance against loss-by motor common carrier." In *American Surety Co.* v. *Googe*, 45 *Ga. App.* 108 (163 S. E. 293), the court said: "Although the bond executed by a public official who was required by statute to execute a bond for the faithful performance of the duties of the office contained limitations upon the liability of the principal and the surety, which were not permissible in the statutory bond, it was payable to the obligee required by the statute, and it was the intention of the parties to execute the statutory bond required of a public officer for the faithful performance of the duties of the office. The limitations are void, and the bond is to be considered as the statutory bond required." One Judge, specially concurring, said: "It is the general rule that where a bond is given under authority of a public statute in force at the time it is executed, in the absence of anything appearing to show a different and contrary purpose and intent, it will be presumed that the intention of the parties was to execute such bond as the law requires, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute, and under the construction given to the statute by the courts." Compare *Great American Indemnity Co.* v. *Vickers*, 53 *Ga. App.* 101 (185 S. E. 150).

It is true that in some of the cases cited above the question involved was whether actions ex contractu against insurance carriers and ex delicto against motor common carriers of passengers could be joined in the same petition before the act of 1937, amending the section under consideration in this respect. Still the principle that the statute becomes a part of the provision of the bond given under the terms of the statute is the same.

It is further contended by counsel for the insurance carrier that

the statute, being in derogation of the common law, should be construed strictly, citing *Russell* v. *Burroughs,* 183 *Ga.* 361 (188 S. E. 451). This is true so far as the construction of the statute is concerned, but it does not apply to the construction of an insurance policy given to take the place of a statutory bond under the statute. As we have observed, regardless of what is provided in the policy, if the terms of the policy are inconsistent with the provisions of the statute, the statutory provisions supersede the stipulations of the policy. The statute nowhere provides that the liability of the insurance carrier be limited to the negligence of the motor common carrier, its servants or agents, only when the vehicle is in motion. If this construction were applied, the negligent carrier could never be held liable for wrongful ejection of a passenger unless the passenger were ejected while the vehicle was in motion, provided we give to the words "operation, maintenance, or use," the construction invoked by the insurance carrier in this case. This would be true it matters not how negligent or how wilfully malicious the conduct of the servant or agent might be. Such is not the intent of the statute. It was the intention of the legislature to subject motor common carriers of passengers to the general liability of law pertaining to railways and street-car common carriers of passengers, except where the statute specifically provides otherwise. It follows that the general law with reference to this relationship applies to motor-vehicle common carriers of passengers. On this subject our courts have held as follows: In *Metts* v. *Louisville & Nashville Railroad Co.,* 52 *Ga. App.* 115 (182 S. E. 531): "The liability of a carrier of passengers begins at the starting point, and does not end until the passenger is discharged." In *Brunswick & Western Railroad Co.* v. *Moore,* 101 *Ga.* 684 (28 S. E. 1000): "Where the relation of carrier and passenger is once established, unless that relation be terminated by the voluntary act of the passenger, or by the carrier under circumstances which would justify such a course, it continues until the passenger is safely deposited at his point of destination, and until he has left or has had a reasonable time within which to leave the premises of the carrier; and if, during the continuance of this relation, he suffer injury in consequence either of the negligent, wrongful or wanton tort of one of the carrier's servants, the carrier is liable." In *Atlanta Consolidated Street Railway Co.* v. *Bates,* 103 *Ga.* 333 (30 S. E. 41):

"The relation of common carrier and passenger exists between a street railroad company and a passenger until he has reached his destination and has had a reasonable opportunity to alight safely from the car; and the carrier during this period is bound to extraordinary diligence on behalf of itself and its agents to protect the life and person of the passenger." In *Southern Railway Co.* v. *Wright,* 6 *Ga. App.* 172 (64 S. E. 703) : "The duty of extraordinary diligence for the safety of passengers, devolving upon a carrier, continues until the passenger has safely alighted from the train." In *Mize* v. *Southern Railway Co.,* 15 *Ga. App.* 265 (82 S. E. 925) : "Where the relation of carrier and passenger is once established, it continues until the passenger is safely deposited at his point of destination, unless it be terminated by the voluntary act of the passenger, or by the carrier under circumstances which would justify such a course."

Our attention is called to *Morgan* v. *New York Casualty Co.,* 54 *Ga. App.* 620 (188 S. E. 581). In that case the policy was not given in compliance with the terms of a statute, and therefore the parties were free to limit the liability as they chose. Also to *Brown* v. *Union Bus Co.,* 61 *Ga. App.* 496 (6 S. E. 2d, 388), the facts in which showed that no relationship of carrier and passenger existed. That decision dealt with the treatment of an agent of the motor common carrier toward a member of the general public, and the question there involved (whether the conduct of the agent was within the scope of his employment) has little similarity to the one with which we are now dealing. In Baron *v.* Auto Mutual Indemnity Co., 247 App. Div. 731 (285 N. Y. Supp. 486), the bond under consideration was given in compliance with a statutory provision, but the statute provided for protection from "negligent operation or use" only of a taxicab passenger carrier. By a three-judge decision it was held that by the use of these words, a bond given under the statute did not cover an unprovoked assault by the operator of a taxicab. Two of the five Judges dissented, holding that even where such words were used in the statute, and where the words were written into the policy, the rule of liberal construction should apply and the liability of the insurance carrier be extended to include an unprovoked assault by the driver on the passenger. In Luchte *v.* State Automobile Mutual Insurance Co., 50 Ohio App. 5 (197 N. E. 421), the insurance policy provided against

liability for loss resulting from a claim for damages "for the use, ownership, maintenance, or operation of a coal truck." The driver of the truck dumped into the street a quantity of coal, and left it unprotected and without lights or warning. An operator of a car collided with the coal pile before daylight, and death resulted. The appellate court held that such injury was not covered by the terms of the policy. This also was a case where the insurance policy was not given in compliance with a statutory requirement, and therefore the terms of the insurance contract prevailed as between the parties making it. In Caron v. American Motorist Insurance Co., 277 Mass. 156 (178 N. E. 286), the statute on which the decision was based provided for injuries arising out of "ownership, maintenance, and control or use" of the motor vehicle. That decision is not applicable to the case at bar, for the statute and the indemnity policy were not at variance as in the instant case.

Our special attention is directed to *American Casualty Co.* v. *Fisher,* 195 *Ga.* 136 (23 S. E. 2d, 395, 144 A. L. R. 533). The principle dealt with by our Supreme Court, under the facts of that case, is not applicable to the case now under consideration. There was no statutory requirement regulating such relationship as existed there and the parties were at liberty to restrict the liability by stipulation in the policy.

In view of what we have said and the authorities cited on the question, the phrase, "resulting from the negligent operation, maintenance, or use of motor vehicles," is construed to mean that the insurance carrier is liable to the passenger in the case at bar, to the same extent as the owner and operator of the motor common carrier passenger vehicle. This liability extends to any injury received by the passengers because of the negligence of such owner, his servants and agents, so long as the relationship of common carrier and passenger exists. Under the allegations of the petition, such relationship had not terminated at the time of the ejection of the passenger.

The court did not err in overruling the demurrer, for any reason assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*