42322. KELLY et al. v. LLOYD'S OF LONDON.
(336 SE2d 772)

BELL, Justice.

This case comes before us upon questions certified by the United States Court of Appeals for the Eleventh Circuit pursuant to Rule 36 of the Supreme Court of Georgia. See OCGA § 15-2-9.

### Statement of the Facts

Appellant Robert E. Kelly is the owner of a pesticide crop dusting concern, d/b/a R & B Helicopters, which was the named insured on a policy of aircraft and aerial application insurance issued by Lloyd's of London.

On June 25, 1981, Tyler Golder, the son of appellants Donald and Nancy Golder, and the employee of Kelly, was killed when he was struck and decapitated by the blade of a helicopter operated by Kelly.

On June 23, 1982, the Golders filed a wrongful death action against Kelly and R & B Helicopters in the Superior Court of Houston County. On July 14, 1982, and August 2, 1982, Lloyd's, through its attorneys, notified Kelly by letter, that it was reserving its right to deny coverage pursuant to exclusions in the insurance policy and intended to file a declaratory judgment action seeking a determination that the exclusions precluded coverage for Tyler. Lloyd's did, however, state that it would provide legal representation for the lawsuit. Lloyd's attorneys, after being granted a time extension on July 21, 1983, filed defensive pleadings on behalf of Kelly on August 31, 1982.

On September 13, 1982, Lloyd's brought a diversity suit in the U. S. District Court for the Middle District of Georgia, Macon Division, seeking declaratory judgment to determine whether the fatal incident was covered by the policy issued to R & B Helicopters, thereby binding Lloyd's to defend Kelly and R & B in the state wrongful death action. Lloyd's contended, pursuant to Exclusion 7, that the fatal incident was not covered by the policy. Exclusion 7 provides that the policy does not apply "to any obligation for which the insured or his insurer may be held liable under any Workman's Compensation, Unemployment Compensation, or Disability Benefits law

or under any similar law, or to bodily injury of any employee of the insured arising out of and in the course of his employment by the insured or his sub-contractor."[1]

At the district court's suggestion, both parties filed motions for summary judgment. On November 29, 1983, the court granted Lloyd's motion for summary judgment, holding that Tyler Golder's death occurred during the course of his employment, that Exclusion 7 of the insurance contract applied, and that Lloyd's had sought declaratory judgment in a timely manner under the requirements of *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215 (231 SE2d 245) (1976). From this judgment, the Golders appealed to the U. S. Court of Appeals for the Eleventh Circuit. On April 19, 1985, the Eleventh Circuit certified several questions of law to this court for determination. *Lloyds of London v. Kelly*, 760 F2d 240 (11th Cir. 1985). We will state and address each certified question separately.

### First Certified Question

"(1)-(a) Whether the policy form used by Lloyd's to issue a policy of aircraft and aerial application insurance to R & B Helicopters; is excepted from the filing requirement of OCGA § 33-24-9 (a)?

"(b) If not, does Lloyd's failure to file the form in accordance with the statute preclude equitable relief because of the 'unclean hands' doctrine or void the exclusionary provision thereby making it unenforceable?"

We hold that Lloyds' aircraft and aerial application insurance policy is excepted from the filing requirement of OCGA § 33-24-9 (a). Pursuant to that subsection, "[n]o basic insurance policy or annuity contract . . . where written application is required . . . shall be delivered in this state . . . unless the form has been filed with and approved by the Commissioner. *This subsection shall not apply to surety bonds or to specially rated inland marine risks nor to policies, riders, endorsements, or forms of unique character designed for and used with relation to insurance upon a particular subject . . .*" (Emphasis supplied.)

Currently, there are only nine insurance companies in Georgia providing coverage for approximately one hundred aerial pesticide contractors. These statistics militate toward the conclusion that a policy providing such insurance coverage is of a *unique* character and is thereby expressly covered by the exclusionary language of OCGA § 33-24-9 (a).

Buttressing this conclusion is the interpretation given the statute

---

[1] At no time during Kelly's operations has he had enough employees to be covered by our Workers' Compensation Act.

by the Insurance Commissioner. "It is a well-settled principle of law that even though an interpretation of a statute by an agency charged with the duty of enforcing it is not conclusive, it is entitled to great weight." *Nat. Adv. Co. v. Dept. of Transp.*, 149 Ga. App. 334, 337 (2) (254 SE2d 571) (1979). Mr. Ralph W. Terry, Chief Deputy Insurance Commissioner for the State of Georgia, expressly stated in an affidavit that Lloyd's is not required to file this particular policy with the Insurance Commissioner pursuant to OCGA § 33-24-9 (a). He added that none of the other insurance companies issuing policies for aerial pesticide contractors had forms on file with the insurance commissioner's office.

Since we find that Lloyd's was not required to file the policy under OCGA § 33-24-9 (a), it is not necessary to answer subsection (b) of the First Certified Question.

### Second Certified Question

"(2) Whether Lloyd's filed its declaratory judgment action in the timely manner required by *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, [supra, 140 Ga. App. 215]."

The appellants contend that Lloyd's should be estopped from bringing their declaratory action for it was not filed immediately after the Golders filed their wrongful death action. We disagree, finding that Lloyd's followed the guidelines enunciated in *Richmond*.

"Upon learning of facts reasonably putting it on notice that there may be grounds for noncoverage and where the insured refuses to consent to a defense under a reservation of rights, the insurer *must* thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, and (c) seek immediate declaratory relief including a stay of the main case pending final resolution of the declaratory judgment action." *Richmond*, supra, 140 Ga. App. at 219.

In complying with these guidelines, Lloyd's properly gave Kelly notice of its reservation of rights and also took necessary steps, by asking for an extension to file and by filing an answer, to avoid default. Two weeks after filing an answer Lloyd's filed the declaratory judgment action.

We reject the Golders' contention that Lloyd's had to file the declaratory judgment action immediately after the Golders filed suit. In *Richmond* the declaratory judgment action was filed following the answer, not following the filing of the action by the plaintiff. The rule enunciated in *Richmond* is based on principles of fairness, and, in determining whether an insurer has met the requirements thereof, the crucial inquiry is whether the rights of the insured have been ade-

quately protected. "This course of action fully informed the insured and prevented any default being obtained in the litigation. The filing of the answer served to protect the rights of the insured as well as the insurer pending the outcome of the declaratory judgment action." In the instant case, no prejudice has been demonstrated by the Golders or Kelly due to the filing of the declaratory action on September 13, 1982. Moreover, we concur in the district court's finding that Lloyd's filing of the declaratory action on that date, within fourteen days of the filing of the defensive pleadings on August 31, was within a reasonable time.

## Third Certified Question

"Whether OCGA § 2-7-103 (a) requires coverage for aviation insurance policies issued to pesticide contractors to include protection for 'persons who may suffer legal damages as a result of the operation of the applicant' with the result that the exclusion relied on by Lloyd's is void and unenforceable because in conflict with the requirement or does it simply set out the requirements for obtaining a pesticide contractor's license?"

At the outset we note that OCGA § 2-7-103 (a) provides in full that "[t]he Commissioner [of Agriculture] shall not issue a pesticide contractor's license until the applicant has furnished evidence of financial responsibility with the Commissioner, consisting either of a surety bond, a liability insurance policy, or a cash deposit or certification thereof, protecting persons who may suffer legal damages as a result of the operation of the applicant, provided that such surety bond, liability insurance policy, or cash deposit need not apply to damages or injury to agricultural crops, plants, or land being worked upon by the applicant."

To answer the certified question regarding OCGA § 2-7-103 (a), we turn to *American Cas. Co. v. Southern Stages, Inc.*, 70 Ga. App. 22 (27 SE2d 227) (1943), involving provisions of our motor common carrier statute. In order to operate as a motor common carrier, a certificate of public convenience must first be obtained. OCGA § 46-7-3. Pursuant to OCGA § 46-7-12, no certificate can be obtained until the applicant files proof of a bond or indemnity insurance policy which provides "adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried and of the public against injury proximately caused by the negligence of such motor common carrier, its servants, or its agents."

In *Southern Stages*, supra, 70 Ga. App., a passenger of Southern Stages was removed from the bus on which he was traveling and placed in a local jail because the bus driver thought he was drunk. The police had the passenger examined by a physician, and discov-

ered he was actually suffering from diabetes. Upon learning his true condition, the police took the passenger to the bus station and advised Southern Stages' agent to have the passenger taken to a hospital immediately. The company refused to transport the passenger, and he subsequently died before treatment was obtained. Id. at 23-24.

The passenger's mother sued Southern Stages, alleging it negligently caused her son's death. Southern Stages defended on the ground that its insurance policy, filed to meet the requirements of OCGA § 46-7-12 (then Code Ann. § 68-612), contained a rider providing that it was only liable for injuries "resulting from the negligent operation, maintenance, or use of motor vehicles." It contended that such language did not cover the incident in question, which occurred after the bus was stopped.

The Court of Appeals rejected this argument, finding that the language of OCGA § 46-7-12, to the effect that the bond or insurance required must protect against injury "caused by the negligence of such motor common carrier, its servants, or its agents," expressed a legislative intent to protect passengers in any instances of negligence, not just those concerning the operation and use of the vehicle. The court analogized the case to those involving statutes requiring the execution of bonds by public officials to insure the faithful performance of their duties of office. *Southern Stages*, supra, 70 Ga. App. at 28. In such cases, the rule is that the statute requiring the issuance of the bond becomes a part of the bond, and that any limitations contained in the bond which are contrary to the statute are void. See *American Surety Co. v. Googe*, 45 Ga. App. 108 (163 SE 293) (1931); *Citizens Bank of Colquitt v. American Surety Co.*, 174 Ga. 852, 859-860 (2) (164 SE 817) (1932); *Southern Stages*, supra, 70 Ga. App. at 28.

Based on the foregoing the court held that the statute became part of the insurance policy, that the carrier could not contract for less liability than that which the statute imposed, and that the limitation contained in the rider was void. *Southern Stages*, supra, 70 Ga. App. at 27-29.

The Court of Appeals noted a sound reason for its conclusions, which was that to hold otherwise would allow the motor common carrier and the insurer to defeat the intention of the General Assembly in enacting OCGA § 46-7-12 (then Code Ann. § 68-612) and render the statute subject to the insurance policy.

We find *Southern Stages* persuasive, and consistent with our rules that provisions of our insurance laws become a part of every insurance policy in this state, and render void any policy provisions inconsistent therewith. *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (2) (300 SE2d 673) (1983); *Nelson v. Southern Guaranty Ins. Co.*, 221 Ga. 804, 807 (147 SE2d 424) (1966); *Gulf American Fire &c. Co. v. McNeal*, 115 Ga. App. 286 (4) (154 SE2d 411) (1967).

We now undertake to apply the above reasoning to the instant case. OCGA § 2-7-103 (a) clearly expresses a legislative intent that "persons who may suffer legal damages" from the operation of a pesticide contractor be protected under the terms of any liability insurance policy entered into between the insurer and the insured pesticide contractor. To hold that the insurer and pesticide contractor can contract for less liability would defeat the intent of the statute. We therefore hold that if Exclusion 7, by excluding employees of R & B Helicopter from coverage, conflicts with OCGA § 2-7-103 (a), it is superseded by the provisions thereof.

Lloyd's argues that "persons who may suffer legal damages" does not include employees. We find, however, no basis to conclude that the broad phrase "persons who may suffer legal damages" does not cover employees.

Lloyd's also contends that "legal damages" refers only to damages arising from the use of chemicals and not to damages arising from the use of aircraft. Again, however, we disagree with this contention. OCGA § 2-7-103 (a) appears in Article 3 of Title 2, Ch. 7, which is entitled "Use and Application of Pesticides." In that article the General Assembly has provided that the Commissioner of Agriculture shall not issue a license to an applicant for the aerial application of pesticides, unless he meets all the requirements of the Federal Aviation Administration and all requirements of this state for the operation of the aircraft. OCGA § 2-7-99 (a) (3). Moreover, the General Assembly has provided that each person granted a pesticide contractor's license must have at least one commercially certified pesticide applicator, OCGA § 2-7-99 (a) (1), and that the Commissioner of Agriculture shall certify such applicators, with one requirement being that the Commissioner require the applicator to demonstrate his competency to apply pesticides safely and effectively. OCGA § 2-7-99 (b) (2). In certifying applicators the Commissioner is authorized to promulgate standards based on the hazards involved, including those involving aerial applications. OCGA § 2-7-98 (b), (c) (3). As evidenced by the foregoing, Article 3 is not just concerned with the dangers involved with the pesticides themselves, but also with the dangers arising from carrying out their application. Therefore, we find it reasonable to conclude that the "legal damages" referred to in OCGA § 2-7-103 (a) include damages arising from the use of aircraft to apply pesticides.

For the foregoing reasons we conclude that Exclusion 7 of Lloyd's policy does conflict with OCGA § 2-7-103 (a) and is thereby rendered void.

Lloyd's, however, relying on *Cotton States Mut. Ins. Co. v. Neese,* 254 Ga. 335 (2) (329 SE2d 136) (1985), contends that if Exclusion 7 is void, it is void only to the extent of the $50,000 minimum

coverage set by the Commissioner of Agriculture pursuant to OCGA § 2-7-103 (b). Lloyd's policy provides $300,000 in coverage, and Lloyd's argues that it should be able to rely on the exclusion with regard to the $250,000 in coverage above the $50,000 minimum.

We find that the present case is distinguishable from *Cotton States*, supra, 254 Ga. In *Cotton States*, id. at 354, we concluded that the exclusion in question was unenforceable only to the extent of the minimum coverage required by our compulsory insurance laws, because our "compulsory insurance law required that these sums be available to compensate injured motorists; it required no more. To the extent that the Barracuda was insured for greater sums, such insurance was purchased for the protection of the insureds . . . ."

In the instant case, however, we construe OCGA § 2-7-103 (a) and (b) as contemplating that *all* of the insurance purchased be purchased to protect "persons who may suffer legal damages as a result of the operation of the applicant [Lloyd's]." First, subsection (a) of § 2-7-103 provides that the specific purpose of the liability policy is to "protec[t] persons who may suffer legal damages as a result of the operation of the applicant [Kelly d/b/a R & B Helicopters]," and it gives no indication that only a certain minimum portion of the total coverage obtained is for the benefit of those the statute seeks to protect.

Moreover, although OCGA § 2-7-103 (b) permits the Commissioner of Agriculture to set certain minimum limits for the coverage, that subsection also provides that the liability policy "shall be maintained at not less than the minimum," and that the total liability of the insurer shall be limited to the face amount of the policy. We find that the only reasonable interpretation of the foregoing statutory language is that the General Assembly envisioned that insureds might obtain coverage over the minimum required, and intended that, in that event, the total amount of insurance coverage so obtained would be used to meet claims asserted by persons § 2-7-103 was enacted to protect.

For the foregoing reasons, we conclude that the rationale of *Cotton States* is inapplicable to the instant case, and that Exclusion 7 is unenforceable up to the policy limits.

*Certified questions answered. All the Justices concur.*

DECIDED NOVEMBER 27, 1985 —
RECONSIDERATION DENIED DECEMBER 9, 1985.

*Jones, Cork & Miller, Carr G. Dodson, Charles L. Ruffin,* for appellants.

*Martin, Snow, Grant & Napier, John C. Edwards,* for appellee.