S05A2103. McKEE v. CITY OF GENEVA et al.
(627 SE2d 555)

CARLEY, Justice.

In 2001, N. Alan McKee sought to locate a solid waste handling facility in the City of Geneva (City). In accordance with OCGA § 12-8-24 (g), he requested written verification from the City that the proposed facility did not violate any zoning or land use ordinances and that it was consistent with all solid waste management plans (SWMP). No zoning or land use ordinance precluded McKee from proceeding. However, his request for verification was denied on the ground that the proposed facility did not comply with the City's SWMP. McKee then filed a mandamus and declaratory judgment action seeking to compel the City to issue the verification. After conducting a hearing, the trial court denied the petition, from which order McKee appeals directly. See *Mid-Ga. Environmental Mgmt. Group v. Meriwether County*, 277 Ga. 670, 671 (1) (594 SE2d 344) (2004).

1. OCGA § 12-8-24 (g) provides, in relevant part, that the verification must attest to the proposed facility's compliance "with the

local, multijurisdictional, or regional [SWMP] developed in accordance with standards promulgated pursuant to this part subject to the provisions of Code Section 12-8-31.1 . . . ." The City approved a regional SWMP in 1993, and in 1995, it further approved a multi-jurisdictional Comprehensive Plan (CP). The trial court agreed with the City's position, and held that McKee's proposed facility must comply with the provisions of the CP, as well as those of the SWMP.

McKee contends that the 1995 CP is inapplicable, and urges that he is entitled to verification because he proposes to develop a solid waste handling facility that fully complies with the SWMP as the City approved it in 1993. The SWMP, as it was originally approved, does not expressly address solid waste handling facilities in substantive terms. Instead, it merely provides that one of its "GOALS" was

[t]o insure that proposed solid waste handling facilities are located in areas suitable for such developments in [the] Talbot County [CP] which will be developed in 1994-95 and not in areas of Talbot County identified as having environmental or other significant development or land limitations.

Thus, the SWMP, as it was approved in 1993, did not preclude locating a facility for the handling of solid waste in the City, because no unsuitable locations for such facilities were identified. Thereafter, the City never formally amended the SWMP so as to incorporate the CP.

The trial court's conclusion that both the SWMP and CP are applicable is contrary to the controlling statutory provision. By its terms, OCGA § 12-8-24 (g) does not require compliance with both a SWMP and a CP. Instead, as previously noted, it provides that the proposed facility must comply only with a "[SWMP] developed in accordance with standards promulgated pursuant to this part subject to the provisions of Code Section 12-8-31.1 . . . ." As it was approved by the City in 1993 and as it remained in succeeding years, the SWMP addressed solid waste handling facilities only in indefinite and vague terms of future "GOALS."

The City contends that the principle of incorporation by reference is applicable, so that, after 1995, the CP became a part of the SWMP. As a general rule, the adoption of documents through the principle of incorporation by reference is valid where the document is sufficiently identified and is made a part of the public record. See *Friedman v. Goodman*, 219 Ga. 152, 159 (3) (b) (132 SE2d 60) (1963). Here, however, the CP was not even in existence when the City contends that it was incorporated by reference into the SWMP. The City does not cite any authority for the proposition that the principle of incorporation by reference can apply prospectively to a document

which has yet to be filed or made a public record because it is non-existent. To the contrary, that proposition appears to be inconsistent with the cases which recognize the principle. See generally *Western & Atlantic R. v. Peterson*, 168 Ga. 259, 265 (5) (147 SE 513) (1929) (ordinance identified the material being adopted only as "new ordinances as compiled by Attorney Fred Morris" and gave no indication where it was filed or that it was made a public record).

In any event, the principle of incorporation by reference applies only "[i]n the absence of statutory or charter provision to the contrary . . . ." *Friedman v. Goodman*, supra at 159 (3) (b). OCGA § 12-8-24 (g) unequivocally states that a SWMP must be "developed in accordance with standards promulgated pursuant to this part subject to the provisions of Code Section 12-8-31.1 . . . ." OCGA § 12-8-31.1 (a), in turn, requires that a city develop or be included in a "comprehensive [SWMP] not later than July 1, 1993." Under OCGA § 12-8-31.1 (b), the SWMP "shall, at a minimum, . . . identify those sites which are not suitable for solid waste handling facilities based on environmental and land use factors." In accordance with this statutory scheme, a SWMP, as originally developed, was required to identify unsuitable sites, not express vague "GOALS" as to the identification of such sites in the future. Therefore, even assuming that incorporation by reference can ever apply prospectively, subsections (a) and (b) of OCGA § 12-8-31.1 are statutory provisions which mandate a comprehensive SWMP by 1993, and thereby preclude the City's reliance on that principle to incorporate the 1995 CP into its SWMP. If the City intended for its comprehensive SWMP to include the substance of the CP, it should have amended the 1993 plan formally. It did not do so.

The dissent places great emphasis on the fact that the SWMP was reviewed and approved by the Georgia Department of Natural Resources and the Georgia Department of Community Affairs more than a decade ago. Although those agencies have administrative authority in the area of solid waste management, the courts have the ultimate authority to construe statutes and to determine whether there has been compliance therewith.

> While the dissent urges that this Court must defer to the [administrative agencies'] construction of the statute[s] in question, we are not bound to blindly follow such an interpretation and decline to do so here. Administrative rulings are not binding on this Court, and will only be adopted when they conform to the meaning which the appellate court deems should properly be given. [Cit.] Thus, we are authorized to make an independent determination as to whether the interpretation of the administrative agency correctly

reflects the plain language of the statute and comports with the legislative intent. [Cit.]

*Sawnee E.M.C. v. Ga. Pub. Svc. Comm.*, 273 Ga. 702, 706 (544 SE2d 158) (2001).

It is well settled that an erroneous administrative interpretation and application of plain and unambiguous provisions of the law, no matter how long applied and well established nor how long acquiesced in, cannot be effective to amend, add to, or take from the law. [Cits.]

*Williams v. Farr*, 97 Ga. App. 881, 887 (104 SE2d 713) (1958), rev'd on other grounds, 214 Ga. 525 (106 SE2d 14) (1958).

Therefore, for purposes of resolving this appeal, it is immaterial whether the SWMP, as it was approved by the City and the administrative agencies, is an ordinance which has the force of law or a plan which does not. Compliance with applicable statutory requirements does not depend on whether those requirements relate to the approval of a plan or the enactment of an ordinance. Here, the controlling statutory provisions require that the City be included in a "comprehensive" SWMP by a date certain and that the SWMP must, "at a minimum," identify the sites which are unsuitable for solid waste handling facilities. OCGA § 12-8-31.1 (a), (b). Under the evidence, the City did not comply with that statutory mandate, notwithstanding the administrative approval of its efforts to comply. Since the City did not comply with the applicable statutory requirement, it cannot rely on its SWMP to deny McKee's request for verification under OCGA § 12-8-24 (g).

2. In addition to concluding that the CP was applicable, the trial court noted

that although [McKee] claims this is a solid waste handling facility, the proposed plan also clearly includes solid waste disposal practices which are specifically addressed in the regional [SWMP]. . . . [S]ince the facility could be considered a solid waste disposal area . . . , the City . . . was correct in considering environmental factors in determining whether to grant the verification requested. . . . The City, after considering the aforementioned environmental factors, was correct in determining that the proposed facility did not meet provisions of the [SWMP].

McKee contends that the trial court erred in addressing his request for verification from the perspective of a solid waste disposal facility, rather than a solid waste handling facility.

The dispositive issue was not whether McKee should be issued a final permit, but rather whether he was entitled to the preliminary verification from the City mandated by OCGA § 12-8-24 (g). Thus, the trial court was not called upon to classify the proposed facility. McKee's intent was to seek from the Director of the Environmental Protection Division of the Department of Natural Resources (Director) a permit for a solid waste handling facility. In accordance with OCGA § 12-8-24 (g), the sole question before the trial court was whether the proposed facility was or was not consistent with the terms of the City's SWMP regarding solid waste handling facilities. If it was, then the City was required to issue a verification and McKee would then be entitled to apply for a permit from the Director. Whether, due to any additional disposal practices, the proposed facility was disqualified from consideration for issuance of a permit for a solid waste handling facility was a question for the Director. Therefore, the trial court's determination that McKee was not entitled to verification based upon its denomination of the facility as one partially intended for solid waste disposal, rather than intended exclusively for solid waste handling, was erroneous.

3. Mandamus is an extraordinary remedy which is available when the petitioner can show a clear legal right to the relief sought or a gross abuse of discretion. *Mid-Ga. Environmental Mgmt. Group v. Meriwether County*, supra at 672 (2). McKee's right to verification under OCGA § 12-8-24 (g) is dependent only upon whether his proposed facility complies with the provisions of the City's SWMP regarding solid waste handling facilities. Since that facility would be located on a site which is not identified as unsuitable in the unamended 1993 SWMP, it does comply with that plan. Therefore, McKee was entitled to the verification, so that he could seek issuance of a permit from the Director. Compare *Mid-Ga. Environmental Mgmt. Group v. Meriwether County*, supra.

*Judgment reversed. All the Justices concur, except Hunstein, P. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting.

I respectfully disagree with the majority's determination that McKee, a person who sought to locate a solid waste facility in Geneva, Georgia, was entitled to a writ of mandamus requiring city officials to issue written verification that McKee's proposed solid waste facility was consistent with the regional solid waste management plan, despite the fact that the regional plan wanted to ensure that proposed solid waste handling facilities were located in areas determined

suitable for such use in the county's comprehensive plan which was to be developed in 1994-95.

The majority believes McKee had a clear legal right to written verification in 2001 because the 1993 version of the regional waste management plan which included Geneva was deficient since it did not specifically delineate sites in Geneva where solid waste facilities could not be built. While the majority acknowledges the 1993 regional plan's reference to the county's developing comprehensive plan, the majority declines to examine the contents of the county's 1995 comprehensive plan on the ground that the principle of incorporation by reference must be employed and "it appears to be inconsistent" to apply the principle here; and, even if incorporation by reference were a possibility, the majority opines it would not be applicable because OCGA § 12-8-31.1 (a) and (b) prohibit the use of incorporation by reference. See *Friedman v. Goodman*, 219 Ga. 152, 159 (3) (b) (132 SE2d 60) (1963) (incorporation by reference applicable only "[i]n the absence of statutory or charter provision to the contrary. . . .").

I first take issue with the majority's implication that the regional solid waste management plan is deficient because it did not meet the minimum standards listed in OCGA § 12-8-31.1 (b). The statute provides:

> The local, multijurisdictional, or regional solid waste plan shall, at a minimum, provide for the assurance of adequate solid waste handling capability and capacity within the planning area for at least ten years from the date of completion of the plan which shall specifically include an adequate collection and disposal capability; . . . enumerate the solid waste handling facilities as to size and type; and . . . identify those sites which are not suitable for solid waste handling facilities based on environmental and land use factors.

The trial court found that the Georgia Department of Natural Resources (DNR) and the Georgia Department of Community Affairs (DCA) reviewed the regional solid waste management plan and found it "to be in compliance with the minimum standards and procedures for solid waste management." The DNR Board is statutorily charged with providing for the control and management of solid waste to protect the environment and the health of humans (OCGA § 12-8-23 (1)), and the director of the Georgia Environmental Division of DNR supervises the administration of solid waste management. OCGA § 12-8-23.1. DCA is the government agency statutorily charged with establishing a review process for local, multi-jurisdictional, and regional solid waste management plans. OCGA § 12-8-31.1 (a), (c). Thus, the very agencies charged with administering solid waste

management reviewed the regional plan at issue and found it to meet the minimum statutory standards. The interpretation of the statute's requirements by the agencies charged with the duties of enforcing and administering it is entitled to "great weight" (*Kelly v. Lloyd's of London*, 255 Ga. 291, 293 (336 SE2d 772) (1985)), and should not be disturbed "except for weighty reasons." *State of Ga. v. Camp*, 189 Ga. 209, 210, hn. 1 (6 SE2d 299) (1939). No such deference appears to have been given by the majority; instead, a plan in effect for over a decade has been judicially excised.

I next take issue with the majority's implicit determination that the regional solid waste management plan is fatally flawed because the county's comprehensive plan to which it referred was not in existence at the time the waste management plan was approved. Citing *Friedman v. Goodman*, supra, 219 Ga. at 159, the majority imposes on the regional solid waste management *plan* the prerequisites of incorporation by reference that are applicable when an *ordinance* adopts by reference the provisions of another *ordinance*. However, a solid waste management *plan* is just that — "just a plan without the force of law . . . [that] merely serves as a guide for the future development of the community. . . ." *Lamar County v. E.T. Carlyle Co.*, 277 Ga. 690, 693 (3) (594 SE2d 335) (2004). Similarly, a county's comprehensive development *plan* is not an ordinance. *Jackson v. Goodman*, 247 Ga. 683, 685 (279 SE2d 438) (1981). "Planning also does not ordinarily impose any immediate restrictions upon land use, but rather 'contemplates the evolvement of an over-all program or design of the present and future physical development of a total area and services. . . .' [Cit.]" *Kingsley v. Florida Rock Indus.*, 259 Ga. App. 207, 211 (2) (576 SE2d 569) (2003). Because neither the regional solid waste management plan nor the comprehensive plan is an ordinance or has the force or effect of law, it is unnecessary to require of them that which might be required when a statute or ordinance is enacted. Cf. *Lamar County v. E.T. Carlyle Co.*, supra, 277 Ga. at 693 (noting that planning (comprehensive plan) and zoning (ordinance) had different procedural processes because they are so distinct in purpose).

The plans serve only as guides for future legislative action and, simultaneously, provide notice to all interested citizens, be they residents, businesses, property owners, and developers, of the overall program of future development being contemplated. The regional solid waste management plan was developed with the knowledge that the county comprehensive plan would state with particularity the land use plan, and the regional plan directed all readers to the comprehensive plan for more detailed information. The county's comprehensive plan was completed 19 months later and its land use plan complemented the regional plan. While we would be faced with

a very different situation had McKee filed his application during those intervening months, McKee did not file his application until 2001, nearly six years after the county's comprehensive plan was completed. Thus, McKee's rights to notice and due process were in no way compromised. By its reversal of the trial court's judgment, the majority has, in effect, handed McKee a windfall and pulled the rug out from under the feet of all the citizens whose local governments participated in the development of the regional solid waste management plan 13 years ago.[1] Their *plan* is now being treated as if it were an *ordinance* with the full force and effect of law, their *plan* has been found to be a defective *ordinance*, and their *plan* is being rendered ineffectual to stop in its tracks the development of 19 acres (in a town with 114 residents) into a facility processing 225 tons of waste, at least 75% of which would be human fecal material.

The majority also finds fault with the regional solid waste management plan because "it merely provides . . . 'GOALS'. . . ." Despite the majority's misgivings, "goals" have a place in solid waste management plans. See *ENRE Corp. v. Wheeler County Bd. of Commrs.*, 274 Ga. 17, 18 (2) (549 SE2d 67) (2001) ("the Heart of Georgia Regional Solid Waste Management Plan . . . addresses seven elements of solid waste management and establishes *goals* for each element.") (emphasis supplied). A *plan* which sets forth goals might be deemed deficient when measured against the requirements for enactment of *laws* or *ordinances* but, as I have pointed out, it is inappropriate to use the *ordinance* measuring stick to determine whether a *plan* is up to snuff.

The majority's actual holding in the case at bar is that OCGA § 12-8-31.1 (a) and (b) preclude the use of incorporation by reference because the statute required the regional solid waste management plan to be complete by July 1, 1993. "In the absence of statutory or charter provision to the contrary, adoption of documents in municipal *ordinances* by incorporation by reference is valid where the document adopted is sufficiently identified and is made a part of public record." (Emphasis supplied.) *Friedman v. Goodman,* supra, 219 Ga. at 159. Neither OCGA § 12-8-31.1 (a) nor (b) mentions incorporation by reference, much less prohibits the use of incorporation by reference; instead, they merely set out minimum requirements for a local

---

[1] The attempt to negate the existence of the regional solid waste management plan based on a purported shortcoming is reminiscent of the attempt in *Lamar County v. E.T. Carlyle Co.,* supra, 277 Ga. 690, where a company wishing to build a construction and demolition landfill sought to gain authority to do so on the ground that the county's solid waste management plan was invalid due to a deficiency. The developer was unsuccessful in that effort and the developer in the case at bar should be similarly unsuccessful.

government's solid waste management plan. The majority apparently believes that a statute which sets forth a deadline by which a plan is to be developed is a statutory provision that prohibits incorporation by reference.[2] Carried to its logical conclusion, the majority's holding means that incorporation by reference cannot be used in a solid waste management plan developed after the July 1, 1993 statutory deadline, or in a solid waste management plan that has not clearly set forth the three criteria listed in OCGA § 12-8-31.1 (b). Somehow, the statutory deadline set forth in OCGA § 12-8-31.1 (a) has become a statutory provision that prohibits the use of incorporation by reference of adoption of documents in municipal ordinances.[3]

Inasmuch as I would affirm the trial court's denial of mandamus on the ground that the 1993 plan met the minimum standards for a regional solid waste management plan and that the reference in the plan to the 1995 comprehensive plan was binding on McKee's application filed in 2001, I disagree with the majority's reversal of the trial court's judgment and cannot endorse the rationale used to reach that result.

I am authorized to state that Presiding Justice Hunstein joins this dissent.

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Fincher, Denmark & Williams, Steven M. Fincher, Winston A. Denmark*, for appellant.
*Page, Scrantom, Sprouse, Tucker & Ford, Deron R. Hicks, Gary E. Byrd*, for appellees.

---

[2] I note that the trial court found that it was not until August 7, 1993, that the City of Geneva authorized submission of a draft solid waste management plan for regional and DNR and DCA review. Neither of the agencies charged with enforcing and administering solid waste management concluded the draft was fatally flawed because it was untimely. Rather, as noted earlier, the administrative agencies found the plan was in compliance with the minimum standards and procedures.

[3] I address this portion of the majority opinion only because it contains the majority's holding that results in the reversal of the trial court's judgment. As stated earlier, I do not believe the rules applicable to incorporation by reference in the enactment of municipal ordinances are applicable to solid waste management plans developed by local governments.