S91A0638, S91X0639. COLLINS v. CITY OF DALTON; and vice versa.

(408 SE2d 106)

WELTNER, Justice.

1. (a) In 1977, the City of Dalton issued revenue bonds, and used the proceeds to purchase ownership interests in power plants and other facilities that were located outside of Whitfield County.[1] At that time, Art. IX, Sec. VIII, Par. I, of the Constitution of Georgia of 1976 provided, in part:

> [I]f municipalities, counties or other political subdivisions shall purchase, construct, or operate . . . electric or gas utility plants from the proceeds of . . . revenue certificates, and extend their services beyond the limits of the county in which the municipality or political subdivision is located, then its services rendered and property located outside said county shall be subject to taxation . . . as are privately owned and operated utilities.

(b) In 1984, the Georgia Department of Revenue first issued notices for ad valorem taxes for property located outside Whitfield County pursuant to Art. IX, Sec. VI, Par. II, of the Constitution of Georgia of 1983, which provides:

> Where revenue bonds are issued by any county, municipality, or other political subdivision of this state in order to buy, construct, extend, operate, or maintain gas or electric generating or distribution systems and necessary appurtenances thereof and the gas or electric generating or distribution system extends beyond the limits of the county in which the municipality or other political subdivision is located, then its services rendered and property located outside said county shall be subject to taxation and regulation in the same manner as are privately owned and operated utilities.

The city brought suit against the revenue commissioner,[2] challenging

---

[1] The city, through the Board of Water, Light and Sinking Fund Commissioners, operates Dalton Utilities, which provides electric, natural gas, water and sewer services within Dalton and the surrounding areas within Whitfield County.

[2] The city filed suit in 1986 and was granted injunctive relief against the collection of

the proposed ad valorem taxation. The trial court granted the city's motion for summary judgment on the issue of the interpretation of this constitutional provision, and the commissioner appeals.

2. The substance of each constitutional provision is to limit, as to certain utilities operated by municipal corporations, the exemption from ad valorem taxes that ordinarily pertains to publicly-owned property.

(a) The 1976 Constitution denied exemption to property located elsewhere than within the county of the municipal corporation operating the utility *if* facilities were purchased, constructed, or operated through the proceeds of revenue bonds *and* if services were extended beyond the limits of the county of the municipal corporation. In that event, the property outside the county would be taxed "as are privately owned and operated utilities."

(b) The 1983 Constitution provides that where a "distribution system extends beyond the limits of the county . . . its services rendered and property located outside said county shall be subject to taxation . . . in the same manner as are privately owned and operated utilities." Thus the substance of the exemption as to the distribution of services remains unchanged. However, the 1983 Constitution added a new condition for the exemption, in that "generating . . . systems" (along with distribution systems) that extend beyond the county of the municipal corporation also are to be taxed as privately owned utilities.

3. In this appeal, it is undisputed that revenue bonds have been issued to purchase generating facilities that are located outside of the county, and that this took place before the ratification of the 1983 Constitution. Hence, there are two issues: whether the 1983 provision applies only in cases of the issuance of revenue bonds after its effective date; and whether a tax exemption that is created by our Constitution may be abolished by constitutional amendment.

4. (a) In *Mundy v. Van Hoose,* 104 Ga. 292, 297 (30 SE 783) (1898), we held:

> Taxation . . . is the rule, and exemption from taxation the exception. . . . *Athens City Waterworks Co. v. Mayor, etc. of Athens,* 74 Ga. 413 [1885]. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by

the tax.

which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed. [Id. at 297.]

(b) We decline to import to the terms "are issued" the idea of a future tense. Accordingly, the 1983 provision includes by its terms the city's generating system.

5. (a) The policy of the law always has looked with disfavor upon tax exemptions. *Mundy*, above.

(b) The purpose of the 1983 provision was to treat, on the same basis as private utilities, those municipal utilities that finance generating or distribution facilities through bonded indebtedness — as to such facilities that are located outside their home counties. That is a rational attempt to create some parity between competitors, one set of which enjoys an exemption from ad valorem taxation.

(c) A third consideration is the simple proposition that the citizens of one county should not be required to subsidize, through tax exemptions, citizens of another county who are patrons of a municipal corporation of that other county.

6. The city's 1976 exemption is not secured forever against diminution or abolition.

(a) The Constitution of Georgia of 1983, Art. VII, Sec. I, Par. I, provides: "The state may not suspend or irrevocably give, grant, limit, or restrain the right of taxation. . . ."[3] *Felton v. McArthur*, 173 Ga. 465 (160 SE 419) (1931), recites:

It was the purpose of the makers of the constitution to deny to the legislature the power to grant exemptions from taxation by laws, contracts, or any other acts. . . . [Id. at 472.]

(b) Hence, the state may not grant tax exemptions, whether statutory or constitutional, that cannot be revoked. Because the Constitution of Georgia prohibits irrevocable restraints on the state's taxing power, the people may amend the Constitution to repeal any tax exemption.

7. The 1983 constitutional provision is applicable, and the generating system and related facilities outside of the county no longer are exempt.

The trial court should have granted the commissioner's motion for summary judgment.

8. In a cross-appeal, the city contends that the trial court erred in

---

[3] See also *Parrish v. Employees' Retirement System of Ga.*, 260 Ga. 613 (398 SE2d 353) (1990) (exemption from state income tax of vested state pension payments may be repealed): "Thus, since 1877, the Georgia General Assembly has had no power to grant an irrevocable tax exemption. . . ."

granting the commissioner's motion to dismiss for want of standing the city's contract clause and equal protection claims; and in denying the motion to add an individual bondholder as a party plaintiff. We have reviewed these contentions and find no error.

*Judgment reversed in Case No. S91A0638. All the Justices concur, except Clarke, C. J., Smith, P. J., and Bell, J., who dissent. Judgment affirmed in Case No. S91X0639. All the Justices concur.*

DECIDED SEPTEMBER 13, 1991 —
RECONSIDERATION DENIED OCTOBER 3, 1991.

*Michael J. Bowers, Attorney General, Warren R. Calvert, Assistant Attorney General,* for appellant.

*Chilivis & Grindler, Nickolas P. Chilivis, David B. Poythress, John K. Larkins, Jr., McCamy, Phillips, Tuggle & Fordham, Carlton C. McCamy,* for appellee.