A05A0665. INLAND PAPERBOARD & PACKAGING, INC.
v. GEORGIA DEPARTMENT OF REVENUE et al.
(616 SE2d 873)

BERNES, Judge.

Appellant Inland Paperboard & Packaging, Inc. filed the instant action in the Superior Court of Floyd County after the Georgia Department of Revenue ("DOR") denied its application for a refund of sales taxes that it paid between February 1994 and June 1997 (the "Tax Period"). The parties thereafter entered into stipulations of fact and filed cross-motions for summary judgment. The trial court denied Inland's motion in part and granted DOR's motion in part. We subsequently granted Inland's application for discretionary review. On appeal, Inland contends that the trial court erred by failing to conclude that repair and replacement parts used in manufacturing equipment located at its Georgia lumber mill, paper plant, and box plant were exempt from taxation under the version of OCGA § 48-8-3 (34) (A) applicable during the Tax Period. For the reasons discussed below, we affirm.[1]

"When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. . . ." (Citations omitted.) *Osman v. Olde Plantation Apts. on Montreal*, 270 Ga. App. 627 (607 SE2d 236) (2004). "[I]n construing [Georgia statutes], we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms . . . and to avoid a construction that makes some language mere surplusage." (Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). Furthermore, "[i]t is well established that laws granting exemption from taxation must be construed strictly in favor of the taxing authority. No exemption will be allowed unless it was intended by the legislature." (Citations

---

[1] In light of our conclusion that the trial court properly ruled that the repair and replacement parts are not exempt from the sales tax, we need not address Inland's remaining claims of error.

omitted.) *Bd. of Assessors &c. v. McCoy Grain Exchange*, 234 Ga. App. 98, 100 (505 SE2d 832) (1998).

With these rules of construction in mind, we turn to the statutory provision at issue in this case, OCGA § 48-8-3 (34) (A) (the "Exemption Statute"). The 1994 version of the Exemption Statute applicable during the Tax Period provided a sales tax exemption for "[m]achinery . . . used directly in the manufacture of tangible personal property when the machinery is bought to *replace* or upgrade *machinery* in a manufacturing plant presently existing in this state." (Emphasis supplied.) OCGA § 48-8-3 (34) (A). The trial court interpreted the 1994 version of the Exemption Statute as only exempting from taxation whole machines used to replace other machines, not repair or replacement *parts* for machines. Inland argues that the trial court should have interpreted the 1994 version also to exempt machine repair and replacement parts. In light of the statutory history of the Exemption Statute, we cannot agree.

It is undisputed in the record that for 43 years, until 1994, the Exemption Statute included language expressly excluding "machinery repair parts" from the sales tax exemption. In 1951, the General Assembly enacted the "Retailers' and Consumers' Sales and Use Tax Act," which authorized the levy and collection of a general sales and use tax. In discussing what was excluded from the scope of the tax, the Act provided:

> The terms "sale at retail," "use," "storage," and "consumption" shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product nor shall such terms include industrial material, *other than machinery and machinery repair parts*, that are used directly in the fabricating, converting, or processing of articles of tangible personal property or parts thereof for resale, nor shall such terms include materials, containers, labels, sacks or bags used for packaging tangible personal property for shipment or sale.

(Emphasis supplied.) Ga. L. 1951, Act No. 240 (H. B. No. 2), p. 365, § 2. Clearly, the General Assembly intended at that time to exclude "machinery [or] machinery repair parts" from the sales tax exemption.

In 1953, the General Assembly attempted to clarify part of the Exemption Statute as it pertained to the exemption of industrial materials. The General Assembly deleted some of the statutory language and substituted new language as follows: "Nor shall such

terms include industrial materials, *other than machinery and machinery repair parts,* that are coated upon or impregnated into the product at any stage of its processing, manufacturing or conversion." (Punctuation omitted; emphasis supplied.) Ga. L. 1953, Act No. 237 (H. B. No. 397), p. 195, § 1. That the General Assembly retained the carve out for "machinery and machinery repair parts" in the Exemption Statute showed an intention to continue taxing those items.

In 1963, the General Assembly added two new exemptions to the Exemption Statute which pertained to manufacturing machinery. The stated purpose of these two new exemptions was to provide an exemption from the sales tax for machinery used in establishing new manufacturing plants in Georgia and for existing plants in Georgia which were expanding production. Manufacturing plants already operating in Georgia but still using the same machinery were not offered an exemption and "machinery and machinery repair parts" remained taxable for those manufacturers. Ga. L. 1963, Act No. 3 (H. B. No. 4), p. 13, § 1.

The General Assembly revisited the language in the Exemption Statute in 1964 and 1966. Ga. L. 1966, Act No. 565 (H. B. No. 303), p. 538, § 1; Ga. L. 1964, Act No. 535 (H. B. No. 742), p. 59, § 3. However, the General Assembly did not remove the language expressly excluding "machinery and machinery repair parts" that had been part of the Exemption Statute since 1951.

In 1994, the General Assembly substantively amended the Exemption Statute in significant measure. Among other things, the General Assembly amended the statute to exempt from the sales tax "machinery . . . bought to replace . . . machinery in a manufacturing plant presently existing in this state." OCGA § 48-8-3 (34) (A). As this language indicates, in amending the sales tax exemption for manufacturing machinery, the General Assembly did not include any explicit reference to "machinery repair parts" as part of what was being exempted from taxation.

The Exemption Statute was amended again in 2000 to add, among other things, a new paragraph, designated 34.3, which expressly exempted repair and replacement parts for manufacturing machinery from taxation on a phased-in basis.[2] This was consistent with the language of the preamble to the 2000 Act, which stated that

---

[2] New paragraph 34.3 exempted:
    (34.3) (A) The sale or use of repair or replacement parts, machinery clothing or replacement machinery clothing, molds or replacement molds, dies or replacement dies, and tooling or replacement tooling for machinery used directly in the manufacture of tangible personal property in a manufacturing plant presently existing in this state. . . .
OCGA § 48-8-3 (34.3) (2000).

the Exemption Statute had been amended "to provide for a phased-in exemption from sales and use tax for certain repair or replacement parts. . . ." Ga. L. 2000, Act No. 684 (H. B. No. 1510), pp. 615-616, §§ 1-2.

Based on this statutory history, we agree with the trial court that the 1994 version of the Exemption Statute in effect during the Tax Period did not exempt from taxation repair or replacement parts for manufacturing machinery. Up until 1994, the General Assembly consistently used the phrase "machinery and machinery repair parts" in the Exemption Statute, treating machinery separately from its constituent parts. Against this backdrop, the General Assembly created a new, broader sales tax exemption in 1994 for manufacturing machinery but used only the word "machinery." "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." (Citation and punctuation omitted.) *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375) (1940). Had the General Assembly intended to also include machine parts within the 1994 version of the exemption, the statutory history shows that it knew how to do so. "We must presume that its failure to do so was a matter of considered choice." *Hollowell v. Jove*, 247 Ga. 678, 683 (279 SE2d 430) (1981).

Furthermore, given the language of the preamble to the 2000 amendment and the addition of new words expressly exempting machine repair and replacement parts from the sales tax in that year, we conclude that the General Assembly intended for the 2000 amendment to *change*, not codify, the existing law. See *Bd. of Assessors v. McCoy Grain Exchange*, supra at 100 ("[W]hen a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law.") (citation and punctuation omitted). Otherwise, the inclusion of the new language referring to repair and replacement parts would be mere surplusage. See *Moritz v. Orkin Exterminating Co.*, 215 Ga. App. 255, 256-257 (450 SE2d 233) (1994) (noting that we must "avoid constructions which render a portion of the statute mere surplusage") (citations omitted). Since the 2000 version of the Exemption Statute for the first time expressly exempted repair and replacement parts from taxation, it follows that such parts were *not* exempt under the 1994 version applicable during the Tax Period. See *Bd. of Assessors v. McCoy Grain Exchange*, supra.

However, Inland contends that the 1994 version of the Exemption Statute should be interpreted to exempt machine repair and replacement parts from the sales tax, given the definition of "machinery" provided by the Supreme Court of Georgia in *Amoena Corp. v. Strickland*, 248 Ga. 496 (283 SE2d 894) (1981). Inland argues that in *Amoena*, the Supreme Court defined "machinery" in a related tax exemption provision to encompass machine repair and replacement

parts. Since the legislature is presumed to enact statutes with full knowledge of the existing law, see *Botts v. Southeastern Pipe-Line Co.*, supra, Inland contends that when the General Assembly used the word "machinery" in the 1994 version of the Exemption Statute, it did so with the understanding that the term included within its ambit machine repair and replacement parts, in light of the definition of that term previously provided by the Supreme Court in 1981.

We disagree with Inland's overly broad interpretation of *Amoena.* In that case, the Supreme Court did not address whether machine repair and replacement parts are included within the definition of manufacturing "machinery" for sales tax purposes. Rather, the question before the Supreme Court was whether molds used in a manufacturing process that produced prosthetic devices could be defined as "machinery" for purposes of a sales tax exemption contained in OCGA § 48-8-3 (34) (B), even though the molds did not "transmit[ ] or modif[y] force or receive[ ] or give[ ] off motion," the traditional definition of a machine. *Amoena Corp. v. Strickland*, supra at 499 (2). The Supreme Court held only that the term "machinery" is not limited to equipment that "generate[s] or distribute[s] power" and thus that the molds — which were multi-part, fully assembled devices that included movable levers — were on par with the other tax exempt manufacturing "machinery" used in Amoena Corporation's plant, namely, the mix/pump, freezer, ovens, scale, mixer, conveyer/heater, etc. (Citations omitted.) Id. What the Supreme Court *did not* address was whether repair or replacement parts *incorporated into a fully assembled device* like a mix/pump, freezer, or mold apparatus could separately and in themselves also constitute "manufacturing machinery" for purposes of the tax exemption statute. Thus, *Amoena* is inapposite to the interpretive issue raised in this case.

For these reasons, we conclude that the trial court properly ruled that machine repair and replacement parts were not included within the tax exemption for manufacturing "machinery" contained in the 1994 version of OCGA § 48-8-3 (34) (A) applicable in this case. Accordingly, the trial court correctly denied Inland partial summary judgment on its claim of tax exemption and properly granted DOR partial summary judgment on the same issue.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 29, 2005 — ▮▮▮▮▮▮▮▮▮▮▮

*Smith, Shaw & Maddox, Virginia B. Harman*, for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Michele M. Young, Assistant Attorney General, for appellees.*