A07A0424. OWENS CORNING v. GEORGIA DEPARTMENT OF REVENUE et al.
(645 SE2d 644)

ADAMS, Judge.
Plaintiff/appellant Owens Corning filed a claim with the Georgia Department of Revenue seeking a refund for sales taxes it paid on purchases of replacement and repair parts for manufacturing machinery during the tax period July 1, 1997 through December 31, 1999 (the "Tax Period"). After the Department failed to issue a ruling on its claim, Owens Corning filed an action for a refund of sales and use tax pursuant to OCGA § 48-2-35 against the Department in the Superior Court of Fulton County. The parties subsequently entered into stipulations of fact[1] and filed cross-motions for summary judgment. The trial court entered a final order granting the Department's motion and denying Owens Corning's motion. Owens Corning appeals.

Owens Corning asserts that the purchases of repair and replacement parts were exempt pursuant to the 1997 version of OCGA

---

[14] *Upshaw,* supra.
[15] See id.
[16] See *Brown,* supra. To the extent that Keane's answer can be viewed as asserting a counterclaim, that claim arguably remains pending below.
[1] The parties stipulated that "the transactions at issue are the purchase of repair and/or maintenance parts for machinery used directly in the manufacture of tangible personal property for sale."

§ 48-8-3 (34) (A), which provided a sales tax exemption for: "[m]achinery, *including components thereof,* which is used directly in the manufacture of tangible personal property when the machinery is bought *to replace or upgrade* machinery in a manufacturing plant presently existing in this state. . . ." (Emphasis supplied.) Ga. L. 1997, p. 1413, § 1. Owens Corning argues that pursuant to that section, purchases of repair and maintenance parts which replaced or upgraded components of the designated machinery were exempt.

The trial court rejected Owens Corning's claim and found the 1997 version of OCGA § 48-8-3 (34) (A) did not exempt from taxation components purchased to repair or replace existing machinery parts because this Court held in *Inland Paperboard &c. v. Ga. Dept. of Revenue,* 274 Ga. App. 101 (616 SE2d 873) (2005), that repair and replacement parts were exempted for the first time in the 2000 amendment to the Exemption Statute. Further, citing the caption to the 2000 amendment, Ga. L. 2000, p. 615 (caption), the trial court concluded that the exemption contained in the 1997 version of the statute "extended only to machinery components purchased to *upgrade* manufacturing machinery."

In *Inland,* after reviewing the statutory history of the Manufacturing Machinery Exemption Statute from its enactment, this Court held that only whole machines purchased to replace or upgrade existing machines, not repair and replacement parts, were exempt from sales and use taxation under the *1994* version of the Exemption Statute. *Inland,* 274 Ga. App. at 104. Although this seemed clear under the plain terms of the 1994 version of the statute, which did *not* provide an exemption for components,[2] id. at 103, this Court nevertheless went on to also consider the 2000 amendment to the Exemption Statute. The Court reasoned that because that amendment added a new paragraph expressly exempting parts purchased to repair or replace components of existing machinery from sales taxation on a phased-in basis, "it follows that such parts were *not* exempt under the 1994 version applicable during the Tax Period." *Inland,* 274 Ga. App. at 103-104. See OCGA § 48-8-3 (34.3) (2000); Ga. L. 2000, p. 616, § 2.

But the Court in *Inland* only compared the 1994 version of the statute with prior versions of the statute and with the 2000 version; it did not consider or address the effect of the 1997 amendment. Thus, we do not find *Inland* to be controlling here. It is plain to us that notwithstanding the changes made in the 2000 version of the statute,

---

[2] The 1994 version of the statute provided for an exemption for "[m]achinery which is used directly in the manufacture of tangible personal property when the machinery is bought to replace or upgrade machinery in a manufacturing plant presently existing in this state." Ga. L. 1994, p. 950, § 5.

which will be considered more fully below, the 1997 version expanded the definition of machinery by including within that definition "components thereof." The language used is plain, and on its face susceptible to just one interpretation — to provide for a sales and use taxation exemption for "[m]achinery, *including components thereof, . . .* when the machinery *is bought to replace or upgrade* machinery. . . ." Ga. L. 1997, p. 1413, § 1.

"In construing Georgia statutes, we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms . . . and to avoid a construction that makes some language mere surplusage." (Citations and punctuation omitted.) *Inland*, 274 Ga. App. at 101. Moreover, "when a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law." (Citation and punctuation omitted.) *Bd. of Assessors v. McCoy Grain Exchange*, 234 Ga. App. 98, 100 (505 SE2d 832) (1998). Thus, we read the 1997 version of the statute to continue to provide a sales tax exemption for the designated machinery bought to replace or upgrade existing machinery and to expand that exemption to also include components of designated machinery bought to replace or upgrade existing machinery.

Although the Department agrees that the 1997 version changed the law so as to provide a sales tax exemption for certain components of machinery, it argues that the 2000 amendment to the statute clearly expresses the legislative intent that the exemption contained in the 1997 version of the statute extended *only* to the purchase of those components that *upgraded* otherwise qualifying manufacturing machinery, but not to components that merely replaced, repaired or maintained such machinery. The Department points out that the stated purpose of the 2000 amendment was: "to clarify that the exemption regarding certain components . . . extends only to machinery components purchased to upgrade such machinery [and] to provide for a phased-in exemption from sales and use tax for certain repair and replacement parts." Ga. L. 2000, p. 615 (caption). This "clarification" was accomplished by striking the 1997 version of OCGA § 48-8-3 (34) (A) and inserting a new paragraph as follows: "Machinery which is used directly in the manufacture of tangible personal property when the machinery is bought to replace or upgrade machinery in a manufacturing plant presently existing in this state and machinery components which are purchased to upgrade machinery used directly in the manufacture of tangible personal property in a manufacturing plant." Ga. L. 2000, p. 615, § 1. The statute was further amended by adding a new paragraph (OCGA § 48-8-3 (34.3)) setting forth a phased in exemption for certain repair and replacement parts. Ga. L. 2000, p. 616, § 2.

It is true, as a matter of general statutory construction, that

[i]f examination of a subsequent statute in pari materia reveals the meaning that the legislature attached to the words of a former statute, it will amount to a legislative declaration of its meaning and it will govern the construction of the former statute; and subsequent legislation declaring the intent of the legislature in enacting an earlier statute is entitled to great weight.

*Fleming v. State*, 271 Ga. 587, 589 (523 SE2d 315) (1999). "But, judicial construction is necessary only when a statute is ambiguous; in fact, when the language of a statute is plain and unequivocal, judicial construction is not only unnecessary but forbidden." Id. "In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." (Citation and punctuation omitted.) *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002).

As stated above, we find the 1997 version of the statute to be plain and unambiguous. The Department points only to the stated purpose of the 2000 amendment; it does not point to any ambiguity in the 1997 version that would allow us to construe the 1997 version based on the 2000 amendment. Moreover, the 2000 amendment does not specifically declare the legislative intent in enacting the 1997 amendment — it declares the legislative intent in enacting the 2000 amendment "[t]o *amend* [that statute] so as to clarify. . . ." Ga. L. 2000, p. 615 (caption). And comparing the language of the 2000 version of the statute with the language of the 1997 version shows that the 2000 version did not merely clarify the *existing* law, but rather as stated in the caption, it "*amended*" the law.

Based on the foregoing, we conclude that Owens Corning, not the Department, was entitled to summary judgment on its claim for a refund of sales tax during the applicable period. The trial court's order granting the Department's motion for summary judgment and denying Owens Corning's motion for summary judgment is thus reversed.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED APRIL 20, 2007 —

*Smith, Shaw & Maddox, Virginia B. Harman*, for appellant.
*Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Michele M. Young, Assistant Attorney General*, for appellees.

*E. Kendrick Smith*, amicus curiae.