S07G1297. GEORGIA DEPARTMENT OF REVENUE et al.
v. OWENS CORNING.

(660 SE2d 719)

MELTON, Justice.

We granted certiorari in this case to determine whether the Court of Appeals erred by holding that the 1997 version of OCGA § 48-8-3 (34) (A) clearly and unambiguously creates an exemption from taxation for machinery repair parts. See *Owens Corning v. Ga. Dept. of Revenue*, 285 Ga. App. 158 (645 SE2d 644) (2007). Based on the applicable standards of review, the legislative history of the statute, and the Legislature's expressed intent that machinery repair parts not be extended a sales tax exemption prior to 2000, we find that no clear, unambiguous exemption for machinery repair parts existed in 1997. Therefore, we must reverse.

Based on its contention that the 1997 version of OCGA § 48-8-3 (34) (A) provided a sales tax exemption for machinery repair parts for machinery it used directly for the manufacture in Georgia of tangible personal property for sale, Owens Corning filed a claim with the Georgia Department of Revenue seeking a refund for sales taxes it paid on such parts between July 1, 1997 and December 31, 1999. The Department failed to rule on this claim, and, as a result, Owens Corning brought an action seeking a refund pursuant to OCGA § 48-2-35. Thereafter, Owens Corning and the Department filed cross-motions for summary judgment, and the trial court granted the Department's motion and denied Owens Corning's motion.[1] On appeal, the Court of Appeals reversed,[2] and we granted certiorari.

The standards for reviewing taxation statutes are well-settled.

Taxation is the rule, and exemption from taxation [is] the exception. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed.

---

[1] In part, the trial court relied on *Inland Paperboard & Packaging v. Ga. Dept. of Revenue*, 274 Ga. App. 101 (616 SE2d 873) (2005) for the proposition that repair and replacement parts did not become exempt from sales tax until 2000.

[2] The Court of Appeals concluded that *Inland Paperboard*, supra, was not controlling because it compared the 1994 version of the statute with the 2000 version of the statute without considering the 1997 version.

(Citations and punctuation omitted.) *Collins v. City of Dalton*, 261 Ga. 584, 585-586 (4) (a) (408 SE2d 106) (1991). Moreover, the interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference. See, e.g., *Kelly v. Lloyd's of London*, 255 Ga. 291, 293 (336 SE2d 772) (1985).

At its inception in 1951 as part of the Retailers' and Consumers' Sales and Use Tax Act and for more than 40 years thereafter, machinery repair parts have been explicitly subjected to sales tax. At the outset, therefore, we begin with a clear and unambiguous legislative intent that machinery repair parts are not exempt from sales tax. This clear intent to tax machinery repair parts must necessarily inform our consideration of future changes in the statute.

In 1994, OCGA § 48-8-3 (34) (A) provided a sales tax exemption for "[m]achinery . . . used directly in the manufacture of tangible personal property when the machinery is bought to replace or upgrade machinery in a manufacturing plant presently existing in this state." There was no reference to machinery repair parts in this statute, and it is undisputed that no exemption existed under this language. Therefore, the historical taxation of machinery repair parts continued as of 1994.

Likewise, no exemption was created under the revision of OCGA § 48-8-3 (34) (A) in 1997. The 1997 statute provides for a sales tax exemption for "[m]achinery, *including components thereof*, which is used directly in the manufacture of tangible personal property when the machinery is bought to replace or upgrade machinery in a manufacturing plant presently existing in this state." (Emphasis supplied.) Nothing in this language creates an explicit exemption from sales tax for machinery repair parts. At best, this language may create some ambiguity that "replacement components" could possibly include repair parts. However, in cases of ambiguity, the statute must be interpreted in favor of the tax, not the exemption. *Collins*, supra. Moreover, in light of the Legislature's explicit past declarations that machinery repair parts should be subject to tax, it stands to reason that, if the Legislature wished to reverse this historical trend in the 1997 amendment, it would have done so explicitly.

The Legislature did not take that action, however, until 2000. That year, OCGA § 48-8-3 was revised once more. The phrase "including components thereof" was deleted from subsection (34) (A). In addition, a new subsection was added which, for the first time, explicitly provides a phased-in exemption applicable to machinery repair parts. Until this point in time, every explicit mention by the Legislature of repair parts was made to show that these items were not allowed an exemption. The 2000 amendment is the first time the Legislature altered this rule.

The Legislature's intent that the exemption for machinery repair parts not take effect until 2000 is made evident from the stated purpose for the 2000 statutory revision, namely "to amend Code Section 48-8-3 . . . , relating to exemption from sales and use taxes, so as *to clarify* that the exemption regarding certain components of machinery used directly in the manufacture of tangible personal property extends only to machinery components purchased to upgrade such machinery." (Emphasis supplied.) The Legislature then goes on to create a prospective phased-in exemption for machinery repair parts. This language shows that the Legislature wished to eradicate any ambiguity caused by the 1997 statute and make it clear that the 1997 statute did not extend the sales tax exemption to machinery repair parts.

Rather than narrowly construing the 1997 amendment, the dissent construes the statute in order to expand the scope of the sales tax exemption to cover machinery repair parts, despite the facts that the statute makes no mention of repair parts and these parts had been explicitly excepted from the exemption for decades, evidence of clear legislative intent that the dissent goes so far as to call "irrelevant." In essence, the dissent turns the appropriate standard of review on its head, construing the statute in favor of the exemption, not the tax. If one interprets the stated purpose of the Legislature in the appropriate manner, however, namely in favor of the tax, the more reasonable conclusion is that the 2000 amendment was necessary to clarify that the 1997 exemption applied to only those components which upgraded machinery, because the former version of the statute was ambiguous and unclear in scope. By its express terms, the Legislature was not limiting an already existing exemption. In finding otherwise, the dissent distorts the standard that "subsequent legislation declaring the intent of the legislature in enacting an earlier statute is entitled to great weight. [Cits.]" *Fleming v. State*, 271 Ga. 587, 589 (523 SE2d 315) (1999). Ultimately, the dissent converts language designed to clarify that no exemption previously existed into a legislative acknowledgment of an exemption that needed to be limited.

At best, the 1997 amendment created an ambiguity as to whether the sales tax exemption applied to machine repair parts, and the law demands that, in such a case, we find that no exemption existed in fact.

*Judgment reversed. All the Justices concur, except Carley, Thompson, and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

The 1994 version of OCGA § 48-8-3 (34) (A) authorized a tax exemption for machinery bought to replace that located in an existing Georgia manufacturing plant. However, that statute did not include an explicit reference to machinery repair parts as items within the exemption. In 1997, OCGA § 48-8-3 (34) (A) was amended to provide for an exemption from tax for

> [m]achinery, *including components thereof*, which is used directly in the manufacture of tangible personal property when the machinery is bought *to replace or upgrade* machinery in a manufacturing plant presently existing in this state . . . . (Emphasis supplied.)

Ga. L. 1997, pp. 1412, 1413, § 1. In 2000, the General Assembly amended OCGA § 48-8-3 again. The term "including components thereof" was deleted from paragraph (34) (A) and a new paragraph (34.3) was added, which provided for a phased-in tax exemption on

> [t]he sale or use of repair or replacement parts, machinery clothing or replacement machinery clothing, molds or replacement molds, dies or replacement dies, and tooling or replacement tooling for machinery used directly in the manufacture of tangible personal property in a manufacturing plant presently existing in this state . . . .

Ga. L. 2000, pp. 615, 616, §§ 1, 2.

Relying on the 1997 version of the statute, Owens Corning (OC) sought a refund from the Georgia Department of Revenue (Department) of the sales taxes paid on replacement and repair parts for manufacturing machinery purchased between July 1, 1997 and December 31, 1999. When the Department failed to rule on the refund claim, OC brought an action against the Department pursuant to OCGA § 48-2-35. On cross-motions for summary judgment, the trial court granted the Department's motion and denied OC's. However, the Court of Appeals reversed, concluding that former OCGA § 48-8-3 (34) (A) unambiguously

> continue[d] to provide a sales tax exemption for the designated machinery bought to replace or upgrade existing machinery and *to expand that exemption to also include components of designated machinery bought to replace or upgrade existing machinery*. (Emphasis supplied.)

*Owens Corning v. Ga. Dept. of Revenue*, 285 Ga. App. 158, 160 (645 SE2d 644) (2007).

The Department's application for certiorari was granted, and today a majority of this Court reverses the holding of the Court of Appeals. I respectfully dissent because, in my opinion, the applicable rules of statutory construction compel the conclusion that the reference to machinery "components" in the 1997 version of OCGA § 48-8-3 (34) (A) unambiguously encompassed repair parts.

The majority correctly notes that

> "[t]axation . . . is the rule, and exemption from taxation the exception . . . . [Cit.] And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed. (Cit.)"

*Collins v. City of Dalton*, 261 Ga. 584, 585-586 (4) (a) (408 SE2d 106) (1991). However, in determining whether the 1997 version of OCGA § 48-8-3 (34) (A) clearly and unambiguously exempted repair parts from taxation, it is necessary that

> [w]e begin our analysis with the "golden rule" of statutory construction, which requires us to follow the literal language of the statute "unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else." [Cit.]

*TELECOM\*USA v. Collins*, 260 Ga. 362, 363 (1) (393 SE2d 235) (1990). I submit that the majority does not adhere to this "golden rule." Instead, it begins its analysis with the unwarranted assumption that the term "components" as used in former OCGA § 48-8-3 (34) (A) is ambiguous, and then attempts to justify that assumption.

The "literal language" of former OCGA § 48-8-3 (34) (A) extended the tax exemption to "components" and, "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter . . . ." OCGA § 1-3-1 (b). "Component," as it appeared in the applicable 1997 version of the statute, was not used as a term of art, and the usual definition of that word is "[a] constituent element, as of a system" or "[a] part of a mechanical or electrical complex." The American Heritage Dictionary (Second College Edition), p. 302. As

thus defined, a single machine part can constitute a "component," without regard to the role that it plays in the operation of the machinery itself. Therefore, the "literal language" of former OCGA § 48-8-3 (34) (A) did not limit the scope of the authorized exclusion to only certain constituent elements or parts of a machine which were used for specified purposes. Instead, it provided for a broadly inclusive tax exemption for any and all constituent elements or parts "bought to replace or upgrade" other constituent elements or parts of exempted machinery. Accordingly, the applicable rules of statutory construction compel the Court of Appeals' holding that the exemption for machinery "components" unambiguously included parts that were bought to repair and replace parts comprising OC's machines in its Georgia manufacturing plants.

The initial flaw in the majority's analysis is that, rather than properly focusing on the controlling "literal language" of former OCGA § 48-8-3 (34) (A), it relies instead on pre-1997 law to demonstrate that an ambiguity exists as to the meaning of "components." However, "components" did not appear in the statute before 1997, so the pre-existing law has absolutely no bearing on the "ordinary signification" which, under OCGA § 1-3-1 (b), is to be given to that word. To the contrary, the addition of "components" to the exemption in that year, when that term had never before appeared in the statutory language, gives rise to a very different presumption than that of ambiguity as to its meaning.

> From the addition of words it may be presumed that the legislature intended some change in the existing law; but it is also presumed that the legislature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication. [Cit.]

*Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739, 743 (152 SE2d 768) (1966). Thus, the addition of the phrase "including components thereof" in the 1997 statute should be presumed to have made some change in the pre-existing substantive law, and the duty of the court is to construe the change so as not to render it meaningless. *Powell v. Studstill*, 264 Ga. 109, 113 (3) (b) (441 SE2d 52) (1994). Since the ordinary signification of "components" does include repair parts, the majority's reliance on the absence of an exemption for those parts in the pre-1997 law renders the General Assembly's addition of "components" to former OCGA § 48-8-3 (34) (A) essentially meaningless.

As the majority observes, the 1997 statutory revision did not explicitly provide that repair parts would be included within the definition of exempted "components." However, the inquiry should not end there, because repair parts can be included in "components"

by necessary implication. *Undercofler v. Colonial Pipeline Co.*, supra. When the General Assembly extended the exemption to "components" in 1997, it did not specify or differentiate between the types of "components" that would be included. Thus, under the applicable rules of statutory construction, so long as the ordinary signification of the term "components" is broad enough to include repair parts, then the effect of the 1997 change in the law was to exempt repair parts by necessary implication. " 'In the absence of words of limitation, words in a statute should be given "their ordinary and everyday meaning." (Cit.)' [Cit.]" *Six Flags over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003). "Components" is not an exception to that rule of statutory construction.

The majority does not dispute that the usual definition of "components" is broad enough to incorporate the notion of repair parts. Instead, it simply urges that,

> in light of the Legislature's explicit past declarations that machinery repair parts should be subject to tax, it stands to reason that, if the Legislature wished to reverse this historical trend in the 1997 amendment, it would have done so explicitly.

P. 490. Under OCGA § 1-3-1 (b), however, the dispositive issue is the "ordinary signification" of the word "components," not the historical tax treatment of repair parts for machinery. If the General Assembly had intended to exclude repair parts from the 1997 extension of the exemption to "components," it could have made that limitation on the definition of "components" explicit. Instead, the General Assembly authorized an unrestricted exception for "components." Therefore, unless there is some basis for concluding that "components," as that term is ordinarily defined, does not include repair parts, then the 1997 enactment must be construed as an extension of the exemption to those parts.

The majority does not set forth any viable rationale for construing "components" narrowly so as to exclude repair parts. Instead, its interpretation of the 1997 revision is ultimately premised on reading into "components" a limitation which the General Assembly did not include in the statute when it changed the pre-existing law. However,

> under our system of separation of powers this Court does not have the authority to rewrite statutes. "(T)he doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law." [Cit.]

*State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006). According to its "literal language," former OCGA § 48-8-3 (34) (A) extended the tax exemption to "components." It did not extend the exemption to "components, *except for repair parts.*" The engrafting of such a limitation on the scope of the broad exemption granted to "components" by the General Assembly in 1997 is not appropriate statutory construction.

The majority not only relies upon the pre-1997 law, it also cites the 2000 revision to the statute as support for its wholesale rewriting of former OCGA § 48-8-3 (34) (A). The applicable rule is that,

> [i]f examination of a subsequent statute in pari materia reveals the meaning that the legislature attached to the words of a former statute, it will amount to a legislative declaration of its meaning and will govern the construction of the former statute; and subsequent legislation declaring the intent of the legislature in enacting an earlier statute is entitled to great weight. [Cits.]

*Fleming v. State*, 271 Ga. 587, 589 (523 SE2d 315) (1999). That rule of statutory construction does not apply here, because the 2000 statute did not expressly declare the legislative intent which underlay the 1997 version of OCGA § 48-8-3 (34) (A). Instead, the stated purpose of the subsequent statute was

> *[t]o amend* Code Section 48-8-3 . . . , relating to exemption from sales and use taxes, *so as to clarify* that the exemption regarding certain components of machinery used directly in the manufacture of tangible personal property extends only to machinery components purchased to upgrade such machinery . . . . (Emphasis supplied.)

Ga. L. 2000, p. 615.

> "Amendment of a statute implies its survival and not destruction. It repeals or changes some provision, or adds something thereto. . .[.] A law is amended when it is in whole or in part permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose."

*Wheeler v. Bd. of Trustees of Fargo Consolidated School Dist.*, 200 Ga. 323, 330 (2) (37 SE2d 322) (1946).

If, as the majority holds, the General Assembly had intended to express the legislative intent in 2000 that the word "components" as it appeared in the 1997 revision of OCGA § 48-8-3 (34) (A) exclude repair parts, then the 2000 legislation presumably would have provided for a *renewal* of the limited exemption that had been granted by the 1997 revision only to "machinery components purchased to upgrade . . . machinery." However, the General Assembly recognized that the 1997 exemption granted to "components" was unambiguously broad enough to include repair parts and, in 2000, it changed that by amending the statute to provide otherwise. Thus, the clear legislative intent of the 2000 statute was "to clarify" that the former broad exemption for "components" granted under the 1997 version would no longer apply after the effective date of the amendment to OCGA § 48-8-3 (34) (A). When properly construed, therefore, the 2000 amendment restricting the scope of the exemption actually supports the interpretation given to the 1997 version by the Court of Appeals, and not that adopted by the majority.

If the majority were correct, then the General Assembly could always effect a retroactive substantive change in the law simply by enacting a subsequent amendment so as "to clarify" that a statute had an entirely different meaning than that which was conveyed by the unambiguous language of its previous provisions. However,

> [r]etroactive statutes are forbidden by the first principles of justice. [Cit.] . . . . Retrospective laws which divest previously acquired rights on principle occupy the same position with ex post facto laws. [Cit.] "Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." [Cit.]

*London Guarantee & Accident Co. v. Pittman*, 69 Ga. App. 146, 156-157 (1) (25 SE2d 60) (1943). It is apparent that the General Assembly understood this constitutional limitation to its authority to divest taxpayers of the exemption provided for machinery repair parts by the 1997 revision of the statute and, by amending the statute in 2000, clarified that that exemption would not be continued in the future. Contrary to the holding of the majority, this Court cannot achieve what was forbidden to the General Assembly, and, by giving the 2000 statute retroactive effect, unconstitutionally deprive a taxpayer of a previously acquired exemption for repair parts.

The majority erroneously relies on the irrelevant text of the pre-1997 and the 2000 statutes to manufacture an ambiguity in the

otherwise clear and unambiguous "literal language" of former OCGA § 48-8-3 (34) (A). The legislative purpose of that provision was to grant a tax exemption, but that is not a valid reason for the judiciary to dispense with the usual rules of statutory construction when called upon to determine the meaning of the otherwise unrestricted term "components" as it appears therein. Applying those applicable rules, the Court of Appeals correctly held that the "ordinary signification" of that word includes repair parts, and its judgment should be affirmed.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED APRIL 21, 2008 —
RECONSIDERATION DENIED MAY 19, 2008.

*Thurbert E. Baker, Attorney General, R.O. Lerer, Deputy Attorney General, Warren R. Calvert, Michele M. Young, Senior Assistant Attorneys General,* for appellants.

*McRae, Stegall, Peek, Harman, Smith & Manning, Virginia B. Harman,* for appellee.