**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2022**

# In the Court of Appeals of Georgia

A22A0095. T-MOBILE SOUTH, LLC. v. CRITTENDEN.

BARNES, Presiding Judge.

The Georgia Department of Revenue, through Robin A. Crittenden, Commissioner, ("the Department") denied the refunds T-Mobile South LLC ("T-Mobile") claimed for sales taxes paid on the purchase of certain equipment.[1] T-Mobile's subsequent petition to the Georgia Tax Tribunal[2] was successful, and the

---

[1]Crittenden was appointed to replace former Commissioner David M. Curry effective July 1, 2021. Crittenden, in her official capacity as State Revenue Commissioner, was substituted by operation of law as a party to the action pursuant to OCGA § 9-11-25 (d) (1).

[2] In 2012, the General Assembly created the Georgia Tax Tribunal to be "an independent specialized agency separate and apart from the Department of Revenue to resolve disputes between the department and taxpayers in an efficient and cost-effective manner." OCGA § 50-13A-2. The Tribunal is "an independent and autonomous division within the Office of State Administrative Hearings operating under the sole direction of the chief tribunal judge." OCGA § 50-13A-3. See also OCGA § 50-13A-5 (a) ("The [Tax

Tribunal ruled that T-Mobile was entitled to the high-technology exemption from sales tax provided by OCGA § 48-8-3 (68) (the "High-Tech exemption") for its purchases of certain equipment for tax years 2012 through 2016. The Department appealed the decision to the Fulton County Superior Court, which reversed the Tribunal's ruling. The trial court found that the equipment did not qualify for the High-Tech exemption, and thus T-Mobile was not entitled to the refund. T-Mobile filed an application for discretionary review of the trial court's judgment, which this Court granted.

On appeal, T-Mobile contends that the trial court disregarded and contradicted certain of the Tribunal's findings of fact, the trial court's interpretation of the High-Tech exemption conflicted in several regards with the statutory text, the trial court erroneously interpreted the High-Tech exemption to exclude any equipment purchased by wireless communication companies, and the trial court erroneously construed new legislation to retroactively affect the interpretation of the High-Tech

Tribunal] shall consist of at least one full-time administrative law judge. If the tribunal has more than one judge, each shall exercise the powers of the tribunal in all matters, causes, or proceedings assigned to him or her.").

2

exemption.[3] Upon our review, the trial court's judgment is vacated, and the case is remanded for proceedings not inconsistent with this opinion.

> Pursuant to OCGA § 50-13A-17, any party may appeal a final decision of the Tax Tribunal to the Superior Court of Fulton County. The superior court defers to the Tribunal's factual findings, but may reverse or modify the judgment if substantial rights of the petitioner have been prejudiced because the tribunal judge's findings, inferences, conclusions, or judgments are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the tribunal; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. On further appeal to this Court, we conduct a de novo review of claimed errors of law in the superior court's appellate review of an ALJ's decision. We also consider de novo any interpretation of a statute or agency.

(Citations and punctuation omitted.) *Inglett & Stubbs Intl. v. Riley*, 339 Ga. App. 375, 376-377 (791 SE2d 642) (2016) (physical precedent only). See OCGA §§ 50-13A-17 (b), (g) . This Court further acknowledges that when reviewing taxation statutes,

---

[3]The Court thanks the Georgia Chamber of Commerce, Metro Atlanta Chamber of Commerce, the Broadband Tax Institute, and the Wireless Association ("CTIA") for their helpful amicus curiae briefs.

[t]axation is the rule, and exemption from taxation is the exception. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed. Moreover, the interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference.

(Citations and punctuation omitted.) *Ga. Dept. of Rev. v. Owens Corning*, 283 Ga. 489, 489-490 (660 SE2d 719) (2008). However, that deference is tempered in that, such "[d]eference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity." (Citation and punctuation omitted.) *City of Guyton v. Barrow*, 305 Ga. 799, 803 (2) (828 SE2d 366) (2019).

With these standards in mind, we turn to the tax question at issue. Central to this appeal is the tax-exemption status of equipment that T-Mobile purchased to build a high-speed broadband internet network (the "LTE network"). T-Mobile sought over $11 million dollars in sales tax refunds for its LTE network equipment purchased

4

during the calendar years 2012 through 2016.[4] See OCGA § 48-8-1 (noting that there are specific exemptions to the taxing of, among other things, the purchase, use, and sale of property and services). The High-Tech exemption provides for a sales tax exemption on "computer equipment." The High-Tech exemption provides, in relevant part, as follows:

The sales and use taxes levied or imposed by this article shall not apply to:

(A) The sale or lease of computer equipment to be incorporated into a facility or facilities in this state to any high-technology company classified under the [] North American Industrial Classification System ["NAICS"] code [5]. . . where such sale of computer equipment for any calendar year exceeds $15 million or, in the event of a lease of such computer equipment, the fair market value of such leased computer equipment for any calendar year exceeds $15 million.

. . .

(C) (i) As used in this paragraph, the term "computer equipment" means any individual computer or organized assembly of hardware or software, such as a server farm, mainframe or midrange computer, mainframe driven high-speed print and mailing devices, and workstations

---

[4] The refund disputes were consolidated for purposes of the appeal to the Tribunal.

[5] The current version of OCGA § 48-8-3 (68) (A) updated the NAICS codes for wireless telecommunication companies to the 2017 NAICS code– 517312. See Ga. Laws 2021, Act 166, § 7.2 (effective July 01, 2021).

connected to those devices via high bandwidth connectivity such as a local area network, wide area network, or any other data transport technology which performs one of the following functions: storage or management of production data, hosting of production applications, hosting of application systems development activities, or hosting of applications systems testing.

(ii) *The term shall not include:*

(I) *Telephone central office equipment or other voice data transport technology.*

(II) Equipment with imbedded computer hardware or software which is primarily used for training, product testing, or in a manufacturing process.[6]

OCGA § § 48-8-3 (68) (A), (C) (2002) (Emphasis supplied.)

Thus, the High-Tech exemption is extended to high-technology companies, as identified by NAICS code,[7] who purchase more than $15 million of "computer

---

[6] An amendment effective July 1, 2021 added,"including any wireline or wireless telecommunication system" at the end of this subsection. See OCGA § 48-8-3 (68) (c) (ii) (I) (2021); Ga. Laws 2021, Act 166, § 7.2 (effective July 01, 2021).

[7] The NAICS codes are used to classify business establishments. Wireless telecommunications carriers such as T-Mobile are classified as a high-technology business under this statutory provision.

equipment" for use in Georgia in a given calendar year. See OCGA § 48-8-3 (68) (A). It is undisputed that T-Mobile qualifies as a high-technology company under the NAICS code, and that its purchase of equipment was over $15 million annually. However, the Department denied the tax refund claims upon concluding that T-Mobile had "failed to meet the $15 million purchase requirement of computer equipment as defined by OCGA § 48-8-3 (68)." T-Mobile protested the refund denial, and following a scheduled review conference, the Department again denied the refund. Foremost to the Department's ruling was its finding that because the "purchased items . . . support [T-Mobile's] mobile telephone network at cell towers and in switching offices[,] [t]he Department considers these items to be 'telephone central office equipment or other voice data transport technology,' and thus not computer equipment as defined by OCGA § 48-8-3 (68)." T-Mobile petitioned the Tribunal for an appeal of the Department's denial.

After a four-day evidentiary hearing, at which the Department and T-Mobile introduced expert testimony, the Tribunal reversed the Department's denial of the sales tax refund. The Tribunal found that the equipment at issue constituted "computer equipment" under OCGA § 48-8-3 (68), rather than "telephone central office equipment or other voice data transport technology," and thus qualified for the

7

High-Tech Exemption. The Tribunal's 54-page opinion included over 100 specific and detailed findings of fact, notably:

> In 2012, T-Mobile began its investment in a new broadband LTE network. The LTE network was launched and available to customers in 2013. The deployment of the new LTE network was a substantial investment which required T-Mobile to purchase computer equipment and software.
>
> T-Mobile made this large investment to meet its customers' demand because the environment was becoming more data-centric. To meet this demand, T-Mobile focused on driving its high-speed data offering. Once launched, the LTE network provided customers high-speed capacity and bandwidth for all data sessions - Internet, smartphones, texting, streaming, social media.
>
> A key distinction between the LTE network and prior technology is that LTE is Internet Protocol "IP" based and entirely packet switched. While 3G had some packet switching ability, these networks are still built around circuit switching technology and continue to be capable of circuit switching. Under an entirely LTE system, "you have no voice switches." A fully packet-switched center is a data center.
>
> Although T-Mobile continued to maintain its existing 2G and 3G networks after the launch of LTE, T-Mobile did not continue to make new investments in its existing networks. During the refund claim

8

periods, T-Mobile's 2G and 3G networks were maintained, but the only equipment that was purchased for these networks was for repairs.

LTE is not a voice network– it was "the first wireless system which was designed from the beginning as a data network." T-Mobile already had 2G and 3G voice networks, and LTE was not intended for voice.

When T-Mobile first launched its LTE network in 2013, it was not capable of transmitting voice. Voice could not travel over T-Mobile's LTE network until June 2014. There was no capability for voice service until that time due to how the software was configured. From that time forward, 98.8 % of the traffic in the LTE network is data, not voice.

The "Internet" is an interconnection of devices and systems in order to store, manage, transmit, receive data, and to generate data. "It is a large distributed computer system interconnected with high-speed networks." The LTE network is one such "distributed network," and T-Mobile's network equipment is an integral part of the high-speed Internet. T-Mobile's LTE network is an assembly of hardware and software that must be interconnected by high-bandwidth connectivity.

(Citations omitted.)

The Tribunal determined that the terms "computer" and "telephone central office equipment" were not ambiguous, and thus deference to the Department's interpretation of the terms was unwarranted. Consequently, the Department concluded

9

that "based on the statute's plain language, . . .each piece of equipment is computer equipment for purposes of the high-tech exemption," and that the equipment could not be excluded as "telephone central office equipment," rather than "computer equipment" because "telephone central office equipment" means "equipment used by local exchange carriers to provide wireline service, housed in a central office." " The Tribunal noted that it is undisputed that "T-Mobile does not maintain a telephone central office. "

The Tribunal acknowledged that there was no "commonly understood definition of the phrase 'other voice data transport technology.'" The Tribunal further noted that the Department had not "issued guidance as to its meaning," and thus finding the term ambiguous, rejected the Department's definition as "the technical capability of transferring vocal sounds in digital form from one place to another." Applying the rules of statutory construction, the Tribunal instead concluded that "the most natural interpretation of the statutory provision" was that "'other voice data transport technology' means technology, other than that housed in a central office, that is used to provide wireline service by a local exchange carrier, such as digital switching." Accordingly, in reversing the Department's denial of the tax refund, the

10

Tribunal held that the subject equipment "constitutes computer equipment under OCGA § 48-8-3 (68) and the equipment is not telephone central office equipment or other data transport technology."

The Department appealed the decision to the Fulton County Superior Court, and the court reversed the Tribunal's decision. The trial court ruled that all of the equipment at issue was excluded as "other voice data transport technology." Central to its ruling was the trial court's determination that the LTE network is capable of and intended to permit voice calls. The trial court further expounded that it did not matter that T-Mobile's LTE network equipment also qualified as "computer equipment" under the High-Tech exemption found in OCGA § 48-8-3 (68), because the equipment was non-exempt "telephone central office equipment or other voice data transport technology."

On appeal, T-Mobile challenges the trial court's judgment.

1. T-Mobile first contends that the trial court improperly substituted its judgment for the Tribunal's on certain questions of fact. It asserts that the trial court disregarded and contradicted the Tribunal's express finding of fact that the LTE network equipment at issue was data transport technology and not voice data transport technology. T-Mobile contends that the trial court erroneously held that

11

because the LTE network was capable of and intended to permit voice calls, it is "other voice transport technology" and thus is excluded from the High-Tech exemption. Such a holding, T-Mobile maintains, contradicts the Tribunal's findings that the LTE network was designed specifically for data transmission rather than voice.

Regarding the Tribunal's factual findings,

[j]udicial review of an administrative decision requires the court to determine that the findings of fact are supported by "any evidence" and to examine the soundness of the conclusions of law that are based upon the findings of fact. OCGA § 50-13-19 (h). As to the first step, OCGA § 50-13-19 (h) provides that the court shall not substitute its judgment for that of the [Tribunal] as to the weight of the evidence on questions of fact but the court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings are clearly erroneous. Thus, the statute prevents a de novo determination of the evidentiary questions leaving only a determination of whether the facts found by the [Tribunal] are supported by any evidence.

(Citations and punctuation omitted.) *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160-161 (3) (664 SE2d 223) (2008).

The legal conclusions drawn from the Tribunal's factual findings require the trial court to undertake a different inquiry.

> While the judiciary accepts the findings of fact if there is any evidence to support the findings, . . . the court is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence, and is authorized to reverse or modify the [the Tribunal's] decision upon a determination that the [Tribunal's] application of the law to the facts is erroneous.

(Citations and punctuation omitted.) *Pruitt Corp*., 284 Ga. at 161 (3).

In its order, the trial court acknowledged the Tribunal's finding that "all of the equipment in this refund claim was purchased to build out [T-Mobile's] LTE network." But, the trial court then found that "the LTE network is capable of, and *indeed intended to permit voice calls*." (Emphasis supplied.) Based on this finding, the trial court concluded that the LTE network constitutes "other voice transport technology," and is thus excluded from the High-Tech exemption. The trial court further expressed that "regardless of whether it qualifies as 'computer equipment' pursuant to OCGA § 48-8-3 (68) (A), it qualifies as '[t]elephone central office equipment or other voice data transport technology' pursuant to OCGA § 48-8-3 (68) (C) (ii) (1)."

13

The Tribunal, however, found that the LTE network "was the first wireless system which was designed from the beginning as a data network," and that LTE *was not intended for voice*." (Emphasis supplied.) The Tribunal also expressly found that the LTE network was not capable of transmitting voice calls throughout much of the tax periods at issue in this case. The Tribunal further found that the LTE network was "a new data-centric, internet-based network."

The judicial review process as prescribed by the legislature in OCGA § 50-13A-17 (g), is clear. The trial court did not specifically rule that any of the Tribunal's factual findings were "clearly erroneous." See OCGA § 50-13A-17 (g) (5). Further, while the trial court is required to examine the soundness of the conclusions of law drawn from the findings of fact, the trial court cannot simply disregard the Tribunal's factual findings, and substitute its own. See *Dept. of Community Health v. Gwinnett Co. Hosp. Sys.*, 262 Ga. App. 879, 883 (586 SE2d 762) (2003) (explaining that the trial court's review of the agency's decision are not de novo, but made with deference to the factual findings of the hearing officer, and that "nothing in our law gives the reviewing courts the right to reconsider those factual findings and make factual findings of their own"). Moreover, the trial court is prohibited from undertaking a de novo determination of evidentiary questions, and should instead

14

determine whether the facts found by the Tribunal are supported by any evidence. See

*Commissioner of Ins. v. Stryker*, 218 Ga. App. 716, 717 (1) (463 SE2d 163) (1995)

(explaining that the standard of review applicable when the superior court is

reviewing an administrative decision prevents a de novo determination of evidentiary

questions and leaves a determination of whether the facts found by the administrative

agency were supported by any evidence).

Although it is undisputed that the LTE network is utilized for voice calls, there

is no evidence that the LTE network was expressly intended for that purpose as the

trial court held. This finding directly contravenes the Tribunal's express and opposite

finding that the LTE network was not intended for voice calls and had been designed

from the beginning as a data network. Rather than ascertaining whether there was

"any evidence" supporting the Tribunal's finding that the LTE network was not

intended for voice calls, or concluding that the Tribunal's finding was "clearly

erroneous," the trial court substituted its own factual finding in that regard. See *Pruitt*

*Corp.*, 284 Ga. at 161 (3), n. 4 (noting that "[i]n [*DHR v. Holland*, 133 Ga. App. 616

(211 SE2d 635) (1974)], the appellate court reversed the superior court's reversal of

the agency decision because the superior court, instead of determining if there was

any evidence supporting the agency's findings of fact, erroneously re-weighed the

15

evidence and substituted its judgment for that of the agency. The *Holland* court's observation that 'the record in this case reveals evidence substantiating the findings of fact and conclusions of law upon which the department's decision is based' was correct where the superior court had erroneously ignored the department's findings of fact and re-weighed the evidence."); *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007) (emphasizing that appellate "[c]ourt is without authority to substitute itself as a factfinding body[.]"); *Ga. State Indemnification Comm. v. Lyons*, 256 Ga. 311, 312 (348 SE2d 642) (1986) (vacating judgment and remanding case and reiterating that in administrative proceedings "[t]he court shall not substitute its judgment for that of the broad as to the weight of the evidence on questions of fact. The court may reverse the decision or order of the board if the board's findings, inferences, conclusions, decisions, or orders are . . . [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record. This language prevents a de novo determination of evidentiary questions leaving only a determination whether the facts found by the board are supported by any evidence.") (citations and punctuation omitted).

While the trial court stated the correct standard of review in its decision, the court then summarily disregarded certain of the Tribunal's explicit factual findings,

which if there was any evidence to support the findings, contravenes the deferential legal framework to be applied therefrom. Accordingly, we vacate the trial court's ruling and remand the case to the trial court for its consideration under the proper standard of review. See OCGA § 50-13A-17 (g); *Pruitt Corp.*, 284 Ga. at 161 (3).

> We take this time to mention to trial courts and litigants that it might seem as though we are putting form over substance when we remand cases such as this for the trial court to apply the proper standard, rather than just reviewing the evidence ourselves under the correct standard. However, the application of the correct standard underpins our system of appellate review and ensures that the factfinder — be that a trial court, administrative tribunal, etc. — is given the appropriate amount of deference as the entity that is tasked with factfinding. Therefore, we find it appropriate and important to insist that it be applied in the first instance. See generally *Burke County v. Askin*, 291 Ga. 697, 701 (2) (732 SE2d 416) (2012) (vacating judgment and remanding case for court to reconsider its decision in light of the applicable legal standard).

*Amguard Ins. Co. v. Kerkela*, 345 Ga. App. 460, 462 (812 SE2d 784) (2018) (physical precedent only).

We further note that nothing in this opinion is intended to indicate how the trial court should rule in this matter after the application of the proper standard of review.

2. Because of our holding in Division 1, we need not consider T-Mobile's remaining enumerations of error.

*Judgment vacated and case remanded with direction. Brown and Hodges, JJ., concur.*