**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 26, 2021**

# In the Court of Appeals of Georgia

A21A0955. EXECUTIVE LIMOUSINE TRANSPORTATION, INC. v. DAVID CURRY, IN HIS OFFICIAL CAPACITY AS REVENUE COMMISSIONER OF THE GEORGIA DEPARTMENT OF REVENUE.

RICKMAN, Chief Judge.

This appeal presents questions of first impression concerning the meaning and application of the Georgia Limousine Carrier Act, OCGA § 40-1-150 et seq. ("the Act"), which was adopted into law in 2012. The Commissioner of the Georgia Department of Revenue ("the Department") denied Executive Limousine Transportation, Inc. ("Executive")'s application for a refund of previously remitted state and local-option sales taxes as well as a declaration that Executive would owe no such taxes in the future. The Georgia Tax Tribunal granted the Department's motion for summary judgment on the application, and the superior court affirmed the

Tribunal's ruling. We granted Executive's application for discretionary review, and Executive now repeats arguments made below that the Act prohibits local governments from imposing the collection of state or local-option sales taxes on limousine companies and their customers. We disagree and therefore affirm.

The relevant facts are not in dispute. Executive, a licensed limousine carrier, contracts with its drivers and independent operators to provide "chauffeured transportation service" to its customers. Executive's drivers are required to be at least 25 years old; to have a clean driving record, two years of experience, and a for-hire car license endorsement; and to pass a medical examination and a background check. In July 2018, Executive applied to the Commissioner of the Department for (1) a refund of approximately $518,524.62 in state sales tax and $366,767.88 in local-option sales tax and (2) a ruling that it will not be required to collect any such taxes in the future. The Department denied Executive's application. In August 2018, Executive filed a petition with the Tax Tribunal arguing that limousine carriers are not subject to sales tax. The Department countered and moved for summary judgment.

In October 2019, the Tribunal held that Executive "has not overcome the presumption" that the applicable regulation, Ga. Comp. R. & Regs. 560-12-2-.84 ("the Rule"), "is valid and that Executive is subject to sales tax under the Rule's plain

language." In addressing Executive's contention that state or local sales taxes constitute an excise tax, the Tribunal held that "notwithstanding the fact that 'excise tax' is not defined anywhere in Georgia statute[s], no authority is cited by either party that demonstrates that local sales tax is an excise tax as that term is used in Georgia law."[1]

Executive then filed a petition for review in the superior court. There, Executive repeated its claim that limousine carriers should not be subject to state sales tax because their services do not constitute "sales" and, even if they are sales, Executive is exempted because it provides "professional" or "personal" services to its customers. Executive also asserted that the Department violated Executive's right to equal protection by not forcing ride-share companies like Uber to collect sales tax and that Executive is not subject to local sales tax under OCGA §§ 40-1-116 and 40-1-168. Adopting the bulk of the Tribunal's order, the superior court upheld the Tribunal's decision, concluding that under Georgia law and the applicable Rule, "for-hire car services like Executive's are subject to sales tax." The court thus denied

---

[1] The Tax Tribunal declined to rule on Executive's equal protection claim, finding that it lacked jurisdiction to resolve the constitutional challenge that the Department has failed to require other for-hire car companies, like Uber, to pay sales tax.

Executive's petition, granted the Department's motion for summary judgment, and entered judgment in favor of the Department. We granted Executive's application for review of the superior court's decision.

On this appeal, Executive repeats two arguments made below: (1) local governments may not impose sales tax on limousine carriers, and (2) the "transaction" between Executive and its customers is not a retail sale subject to sales tax, but rather a "professional" or "personal" service exempt from such tax.

When reviewing an appeal from the Tax Tribunal, the superior court defers to the Tribunal's factual findings, but may reverse or modify the judgment if substantial rights of the petitioner have been prejudiced because the Tribunal's findings, inferences, conclusions, or judgments are:

> (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the tribunal; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13A-17 (g). We conduct a de novo review of both claimed errors of law in the superior court's appellate review and any interpretation of a statute or agency

4

regulation. *Upper Chattahoochee Riverkeeper v. Forsyth County*, 318 Ga. App. 499, 502 (734 SE2d 242) (2012). "[T]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." (Citation omitted.) *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008); see also *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (664 SE2d 223) (2008). However,

> [w]hile judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes. It is the role of the judicial branch to interpret the statutes enacted by the legislative branch and enforced by the executive branch, and administrative rulings will be adopted only when they conform to the meaning which the court deems should properly be given. The judicial branch makes an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent.

(Citations and punctuation omitted.) *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008).

1. Executive first argues that the superior court erred in refusing to apply the Georgia Limousine Carrier Act, OCGA § 40-1-150 et seq., and especially OCGA §

5

40-1-168, which bars local governments from imposing "excise" and other taxes on limousine carriers, to Executive's request for a refund of sales tax. We disagree.

Ever since the first adoption of a state sales tax in 1951, Georgia law has defined a "retail sale" broadly – under current law, for example, as "any sale, *lease, or rental* for any purpose other than for resale, sublease, or subrent[,]" including, except as otherwise provided, "the sale of . . . *transportation*, . . . when made to any purchaser for purposes other than resale[.]" (Emphasis supplied.) OCGA § 48-8-2 (31) and (31) (A);[2] see also Ga. L. 1951, pp. 360, 364, § 3 (c) (1) (defining "retail sale" as including "the sale of . . . transportation"). The relevant portion of the tax code, concerning "sales and use taxes," also begins with the following declaration:

> It is the intention of the General Assembly in enacting this article to *exercise its full and complete power to tax the retail purchase, retail sale, rental, storage, use, and consumption of tangible personal property* and the *services* described in this article except to the extent prohibited by the Constitutions of the United States and of this state and except to the extent of specific exemptions provided in this article.

---

[2] In 2011, the General Assembly deleted a reference to "services taxable under this article" and added the terms "lease, or rental." Ga. L. 2010, Act 507, § 1.

(Emphasis supplied.) OCGA § 48-8-1. This expansive language in favor of taxation is in accordance with the maxim that "[t]axation is the rule, and exemption from taxation the exception." *Owens Corning*, supra, 283 Ga. at 490. As our Supreme Court explains:

> "[E]xemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed."

Id., quoting *Collins v. City of Dalton*, 261 Ga. 584, 585-586 (4) (a) (408 SE2d 106) (1991). OCGA § 48-8-2 (33) (A) likewise defines "sale" broadly, as "any. . . transfer of title or possession, transfer of title and possession, *exchange, barter, lease, or rental,* conditional or otherwise, in any manner or *by any means of any kind of tangible personal property for a consideration*[.]"[3] (Emphasis supplied.)

---

[3] Executive does not dispute that its vehicles are such tangible personal property.

In accordance with this statutory scheme, Rule 560-12-2-.84, first adopted in 1965 and amended in 1983 and 1991,[4] declares that for-hire cars are subject to sales tax:

(1) *Taxicab owners and operators.* Any person owning and operating a taxicab or taxicabs shall register as a dealer and pay the tax at the time of purchase on tangible personal property used or consumed in the operations. . . . [S]uch person *shall collect the tax on fares for the transportation of persons* in accordance with the uniform bracket system and shall remit same to the State Revenue Commissioner. . . .

(4) *Taxicab "headquarters" operators.* Any person operating a headquarters for taxicabs and supervising or directing taxicab drivers, or receiving and relaying calls to cab driver members, shall register as a dealer. . . .

(6) *Cars for hire.* For the purpose of this regulation, *cars for hire are taxable in the same way as taxicabs.*

(7) . . . (b) [H]eadquarters operators and lessees of taxicabs *shall collect the tax on fares for transportation of persons from their drivers as required above. . . .*

---

[4] See Ga. L. 1937-38, Extra Sess., pp. 77, et seq., as amended (Ga. Code Ann. Secs. 92-8405, 8406, 8409, 8427); Ga. L. 1951, pp. 360, 385.

(Emphasis supplied.) Ga. Comp. R. and Regs. 560-12-2-.84 (1991). And in *Collins v. Adam Cab*, 261 Ga. 305 (404 SE2d 560) (1991), our Supreme Court noted the Rule's "recogni[tion of] the need [for owners and operators] to collect the tax on fares for transportation of persons" before concluding that taxicab companies were properly required to collect sales tax. Id. at 306 (1).

In short, the sale of transportation by hired car has been subject to sales tax ever since that tax's introduction into Georgia law, and all taxpayers who own, operate, or direct such vehicles are responsible for collecting and remitting sales tax. It is against this backdrop that the Georgia General Assembly enacted the Georgia Limousine Carrier Act, OCGA § 40-1-150 et seq., in 2012.[5] Executive's argument now centers on Section 40-1-168 of the Act,[6] which provides in full:

----

[5] See Ga. L. 2012, Act 632, § 1.

[6] In its application to this Court, Executive also cited Section 40-1-162 of the Act, which provides in relevant part:

> *The State of Georgia fully occupies and preempts the entire field of regulation over limousine carriers as regulated by this part*; provided, however, that the governing authority of any county or municipal airport shall be authorized to permit any limousine carrier doing business at any such airport and may establish fees as part of such permitting process[.]

9

*No subdivision of this state, including cities, townships, or counties,*
*shall levy any excise, license, or occupation tax* of any nature, on the
right of a limousine carrier to *operate equipment*, or on the equipment,
*or on any incidents of the business of a limousine carrier*.

(Emphasis supplied.)

When we consider the meaning of a statute, we must presume that the
General Assembly meant what it said and said what it meant. To that
end, we must afford the statutory text its plain and ordinary meaning, we
must view the statutory text in the context in which it appears, and we
must read the statutory text in its most natural and reasonable way, as an
ordinary speaker of the English language would. . . . [I]f the statutory
text is clear and unambiguous, we attribute to the statute its plain
meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (751
SE2d 337) (2013).

Although Executive argues that a tax collected from its riders, the ultimate
consumers of its services, amounts to an "excise" tax, the General Assembly chose

_____

(Emphasis supplied.) On its face, however, OCGA § 40-1-162 addresses "regulation,"
not taxation, and goes on to specify the circumstances under which limousine carriers
serving airports may be issued permits and charged "fees as part of such permitting
process." It thus has no bearing on the question whether Executive and other
limousine carriers are subject to sales tax.

10

not to use the term "sales tax" in the Act – a choice of omission we must respect. See, e.g., *New Cingular Wireless PCS, LLC v. Ga. Dept. of Revenue*, 303 Ga. 468, 472 n. 8 (813 SE2d 388) (2018) (rejecting an attempt to efface a statutory and regulatory distinction between the terms "refund" and "determination," which "are not identical terms"). Further, the remaining categories of tax barred under the terms of OCGA § 40-1-168 – that is, "license" and "occupation" taxes – are generally imposed before or in addition to any imposed at the ultimate "sale" to a consumer. See, e.g., Black's Law Dictionary, 9th ed. (2009), p. 646 (defining the noun "excise" as "[a] tax imposed on the manufacture, sale, or use of *goods* (such as a cigarette tax), or on an *occupation* or *activity* (such as a *license* tax or an attorney *occupation* fee") (emphasis supplied).

Likewise, Georgia law commonly distinguishes between "excise " and "sales" taxes as those imposed earlier and later in the stream of commerce – that is, at the wholesale and retail levels. See, e.g., OCGA §§ 48-11-2 (a), (e) (imposing an "excise tax, *in addition to all other taxes* of every kind imposed by law," on tobacco and vapor products, to be paid by "the dealer or distributor licensed pursuant to this chapter to the commissioner for deposit and distribution as provided in this chapter upon the *first transaction* within this state") (emphasis supplied), 48-8-2 (31) (A)

11

(defining "retail sale" as including sale of "tobacco products"); OCGA §§ 48-9-3 (a) (1) (imposing an "excise tax . . . on distributors who sell or use motor fuel . . . within this state"), 48-8-2 (23) (imposing a prepaid local sales tax on retail motor fuel sales); OCGA §§ 3-4-80 (imposing an "excise tax" on "the first sale, use, or final delivery" of distilled spirits), 48-8-2 (31) (A) (imposing a local sales tax on the retail sale of "alcoholic beverages").

Further, our Supreme Court has recently enforced just this distinction between "sales" and "excise" taxes. In *Ga. Motor Trucking Association v. Ga. Dept. of Revenue*, 301 Ga. 354 (801 SE2d 9) (2017), the Court rejected a trucking industry representatives' attack on the collection of local sales taxes on motor fuels. Noting the longstanding existence of various "excise" taxes on motor fuel dating from 1937, id. at 358-359, citing OCGA § 48-9-3 (a) (1) (2014), as well as the relevant constitutional provision on motor fuel, see Ga. Const. of 1983, Art. III, Sec. IX, Par. VI (b) (adopted at Ga. L. 1960, pp. 1297, §1), the Court concluded that "'motor fuel taxes' are limited to per-gallon taxes on *distributors* of motor fuel, and *do not include sales and use taxes imposed on retail sales* of motor fuels." (Emphasis supplied.) Id. at 354; see also 366 (in "historical context," the motor fuel provision has always

12

referred to "per-gallon taxes imposed on distributors" in OCGA § 48-9-3, and not "local sales and use taxes").

Given these statutory and appellate authorities, we conclude that the superior court did not err when it determined that no part of the Act, including OCGA § 40-1-168, bars the imposition and collection of state or local-option sales taxes from for-hire car services such as Executive for the rental of its limousines or cars. Rather, the plain language of the Act relieves Executive of the duty only to collect and remit "excise, license and occupation" tax, but not state or local-option sales tax. Here, "the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent." *Handel*, 284 Ga. at 553. We therefore affirm the trial court's judgment on the matter.

2. Executive also contends that even if limousine services are "retail sales," its drivers offer "professional" and "personal" services exempted from sales tax under OCGA § 48-8-3 (22). We do not agree.

OCGA § 48-8-3 (22) provides an exemption from sales tax for "[p]rofessional, insurance, or personal service transactions which involve sales as inconsequential elements for which no separate charges are made[.]" The Limousine Carrier Act itself does not define or refer to for-hire car services as "professional" or "personal"

13

services, however, and Executive has not cited any other Georgia statute, rule, or court decision that recognizes for-hire drivers as "professionals." Compare OCGA §§ 43-3-1 et seq., 43-10-1 et seq., 43-23-1 et seq., and 43-26-1 et seq. (establishing standards, including professional licensing boards, for workers including accountants, barbers and cosmetologists, landscape architects, and nurses). Specific rules also apply to state contracts for "professional services," including architecture, registered interior design, engineering, and land surveying. See OCGA § 50-22-2 (4) (defining "professional services").

By contrast, for-hire drivers and limousine carriers are not identified as "professionals" in any of the statutes regulating these professions or in the Limousine Carriers Act itself. Rather, for-hire drivers are controlled under a separate, non-professional statutory and regulatory scheme. See OCGA § 40-5-39 (a), (b), (e) (a for-hire driver must have either a license endorsement issued by the Department of Driver Services or a private background check and certification, including submission to fingerprinting). Nor can we understand how the provision of a driver and vehicle to a customer, which constitutes a retail sale, is "an inconsequential element" of the ride "for which no separate charges are made[.]" OCGA § 48-8-3 (22). Instead, such

provision of transportation is at the core of what a for-hire driver and service sells to its customers.

For all these reasons, we affirm the trial court's grant of summary judgment to the Department on Executive's petition for a refund and declaration.

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps concurs. McFadden, P. J., dissents.*

# In the Court of Appeals of Georgia

A21A0955. EXECUTIVE LIMOUSINE TRANSPORTATION,
    INC. v. CURRY.

MCFADDEN, Presiding Judge, dissenting.

Executive Limousine Transportation, Inc. argues that it is entitled to a refund of local sales taxes because OCGA § 40-1-168, a provision of Title 40's Georgia Limousine Carrier Act, prohibits such taxes. But the Georgia Tax Tribunal lacks jurisdiction "to hear any matter arising under . . . Title 40." OCGA § 50-13A-9 (c). In resolving Executive's argument, the tribunal violated the statute defining its

16

jurisdiction and acted in excess of its statutory authority. The superior court should have reversed the tribunal. OCGA § 50-13A-17 (g) (1), (2). Because it did not, we must reverse the superior court. So I dissent.

"The jurisdiction of administrative agencies is statutorily given and must be strictly construed to comport with legislative intent." *Dept. of Natural Resources v. American Cyanamid Co.*, 239 Ga. 740, 743 (3) (238 SE2d 886) (1977). Here, the legislature's intent is explicit. When the General Assembly created the tribunal in 2012, it gave the tribunal jurisdiction over petitions "for relief as set forth in Code Sections 48-2-18, 48-2-35, 48-2-59, 48-3-1, 48-5-519, 48-6-7, and 48-6-76 and subparagraph (d) (2) (C) of Code Section 48-7-31;" "actions for declaratory judgment that . . . involve a rule of the commissioner that is applicable to taxes administered by the commissioner under Title 48;" and "refund petitions filed pursuant to Code Section 48-5-342." OCGA § 50-13A-9 (a), (e). But the General Assembly explicitly provided that "[t]he tribunal shall not have jurisdiction to hear any matter arising under Title 3 or Title 40." OCGA § 50-13A-9 (c). The tribunal thus lacked jurisdiction to resolve Executive's claim for a refund under OCGA § 40-1-168, and the superior court should not have affirmed the tribunal's decision.

17

It does not matter that neither party raised the issue of the tribunal's lack of subject-matter jurisdiction. An agency "cannot exercise power beyond [its] constitutional or statutory authority [or] adopt a power that is not conferred on it by the governing statute. Further, state agencies cannot acquire subject matter jurisdiction through consent, waiver, or estoppel." 81A C.J.S. States § 235. Although the parties "did not raise any objection to jurisdiction below, . . . subject matter jurisdiction has a unique attribute. It can *never* be waived." *Bolden v. Barton*, 278 Ga. 831, 832 (1) (607 SE2d 889) (2005) (emphasis in original; citation and punctuation omitted); accord *Cowart v. Ga. Power Co.*, 354 Ga. App. 748, 752 (841 SE2d 426) (2020). Our Supreme Court has long held that "[j]urisdiction of the subject matter of a suit cannot be conferred by agreement or consent, or be waived or based on an estoppel of a party to deny that it exists." *Ga. R. R. & B. Co. v. Redwine*, 208 Ga. 261, 262-263 (1) (66 SE2d 234) (1951) (citation and punctuation omitted). And when we determine that a judgment has been rendered in the absence of subject-matter jurisdiction, we will reverse that judgment, whether or not the issue was raised below. *Lackey v. Lackey*, 216 Ga. 177, 178 (1) (115 SE2d 565) (1960).

We have applied the rule, in the context of a workers' compensation case, that an administrative body's lack of subject-matter jurisdiction cannot be waived. In

18

*Great American Indem. Co. v. Wimberly*, 96 Ga. App. 588 (100 SE2d 593) (1957), we held that, under provisions of the Workers' Compensation Act, the State Board of Workers' Compensation, as an administrative body, lacked subject matter-jurisdiction to reconsider a prior award without a timely application for review. Id. at (1) (a). We then held that because the requirement was jurisdictional, it could not be waived. Id. at (1) (b). See also *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers & Trainmen Gen. Committee of Adjustment, Central Region*, 558 U.S. 67, 81 (III) (A) (130 SCt 584, 175 LE2d 428) (2009) (considering jurisdiction of the National Railroad Adjustment Board and holding that "[s]ubject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived.") (citation and punctuation omitted).

It is true that in *Bentley v. Chastain*, 242 Ga. 348 (249 SE2d 38) (1978), our Supreme Court declined to "reach the [appellants'] contention, raised for the first time on appeal, that the Cobb County Board of Zoning Appeals was without subject matter jurisdiction to entertain [appellee's] variance petition." Id. at 352. We should not rely on this single sentence to override the longstanding rule in Georgia that subject-matter jurisdiction can never be waived, a rule that we have applied previously to a decision of an administrative agency.

For these reasons, I would reverse the superior court's judgment affirming the judgment of the tax tribunal and direct the superior court to remand for the tax tribunal to conduct further proceedings not inconsistent with this opinion, whether that be, for example, dismissing Executive's claim arising under Title 40 and re-entering its order as to Executive's other claims or transferring the entire matter to the superior court for resolution. See Ga. Const. Art. VI, § I, Para. VIII; OCGA § 50-13A-9 (a), (b). I would leave the decision of how to proceed to the tax tribunal in the first instance.